**NO. 23-4451**

In The

# United States Court Of Appeals
## For The Fourth Circuit

### UNITED STATES OF AMERICA,

*Plaintiff – Appellee,*

**v.**

### PATRICK TATE ADAMIAK,

*Defendant – Appellant.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
AT NORFOLK**

_____

**BRIEF OF APPELLANT**

_____

**Dennis E. Jones**
**DENNIS E. JONES, PLC**
**230 Charwood Drive**
**Suite A**
**Abingdon, VA  24210**
**(276) 619-5005**

*Counsel for Appellant*

**<u>TABLE OF CONTENTS</u>**

**Page:**

TABLE OF AUTHORITIES ..................................................................... iii

STATEMENT OF JURISDICTION ........................................................1

STATEMENT OF ISSUES PRESENTED ...............................................1

STATEMENT OF THE CASE ................................................................1

    Procedural Overview ........................................................................1

    Trial Evidence ..................................................................................5

SUMMARY OF THE ARGUMENT .......................................................9

ARGUMENT ........................................................................................10

    I.    ADAMIAK'S COUNSEL PROVIDED INEFFECTIVE
        ASSISTANCE BEFORE AND DURING TRIAL ..........................10

        A.    Standard of Review ...............................................................10

        B.    The Conduct of Adamiak's Counsel Was Ineffective
              Under *Strickland* .................................................................13

    II.    THERE WAS INSUFFICIENT EVIDENCE TO PROVE
        BEYOND A REASONABLE DOUBT THAT APPELLANT
        POSSESSED AN UNREGSTERED MACHINEGUN OR AN
        UNREGISTERED DESTRUCTIVE DEVICE ...............................18

        A.    There Was Insufficient Evidence to Prove That the
              Components in Appellant's Possession Could be Readily
              Restored to Shoot .................................................................18

        B.    There Was Insufficient Evidence to Prove That Adamiak
              possessed Parts From Which A Destructive Device Could
              Be Readily Assembled ...........................................................19

CONCLUSION .....................................................................................21

REQUEST FOR ORAL ARGUMENT....................................................................21

CERTIFICATE OF COMPLIANCE .........................................................................22

## <u>TABLE OF AUTHORITIES</u>

**Page(s):**

**Cases:**

*Bobby v. Van Hook*,
 558 U.S. 4, 130 S. Ct. 13, 175 L. Ed. 2d 255 (2009) ....................................12

*Florida v. Nixon*,
 543 U.S. 175, 125 S. Ct. 551, 160 L. Ed. 2d 565 (2004) ..............................12

*Goins v. Warden, Perry Corr. Inst.*,
 576 F. App'x 167 (4th Cir. 2014)....................................................................11

*Griffin v. Warden, Maryland Corr. Adjust. Ctr.*,
 970 F.2d 1355 (4th Cir. 1992)..................................................................15, 16

*Padilla v. Kentucky*,
 559 U.S. 356, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010) ...........................15

*Ramirez v. United States*,
 799 F. 3d 845 (7th Cir. 2015)..........................................................................14

*Roe v. Flores-Ortega*,
 528 U.S. 470, 120 S. Ct. 1029, 145 L. Ed. 2d 985 (2000) ...........................14

*Staples v. United States*,
 511 U.S. 600, 114 S. Ct. 1793, 128 L. Ed. 2d 608 (1994)..............................9

*Strickland v. Washington*,
 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984) ............12, 13, 14, 15

*United States v. Baptiste*,
 596 F.3d 214 (4th Cir. 2010)..........................................................................10

*United States v. Benton*,
 523 F.3d 424 (4th Cir. 2008)..........................................................................10

*United States v. Blackburn*,
 940 F.2d 107 (4th Cir. 1991)..............................................................19, 20, 21

*United States v. Carthorne,*
   878 F.3d 458 (4th Cir. 2017)...........................................................................15

*United States v. Cronic*,
   466 U.S. 648, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984) ..............................14

*United States v. Enright*,
   ARMY 20030379, 2005 CCA Lexis 627
   (U.S. Army Ct. Crim. App. Apr 20, 2005)............................................... 20-21

*United States v. Faulls,*
   821 F.3d 502 (4th Cir. 2016)...........................................................................11

*United States v. Fisher*,
   477 F.2d 300 (4th Cir. 1973)...........................................................................10

*United States v. Ford,*
   88 F.3d 1350 (4th Cir. 1996)...........................................................................14

*United States v. Freeman,*
   24 F.4th 320 (4th Cir. 2022)............................................................................11

*United States v. Kelly*,
   276 F. App'x 261 (4th Cir. 2007), *cert. denied*, 554 U.S. 932 (2008)............18

*United States v. Malone,*
   546 F2d 1182 (5th Cir. 1977)............................................................. 19-20, 21

*United States v. Mandello,*
   426 F.2d 1021 (4th Cir. 1970)........................................................................11

*United States v. Seven Miscellaneous Firearms,*
   503 F. Supp. 565 (D.D.C. 1980)......................................................................19

*United States v. Simmons,*
   83 F.3d 686 (4th Cir. 1996)............................................................................20

*United States v. Thompson/Center Arms Co.*,
   504 U.S. 505, 112 S. Ct. 2102, 119 L. Ed. 2d 308 (1992)................................9

*Vandross v. Stirling*,
    986 F.3d 442 (4th Cir. 2021)...........................................................................11

*Washington v. Murray*,
    952 F.2d 1472 (4th Cir. 1991)........................................................................16

*Wiggins v. Smith*,
    539 U.S. 510, 123 S. Ct. 2527, 156 L. Ed. 2d 471 (2003) ...........................12

*Williams v. Taylor*,
    529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000) ...........................12

*Winston v. Pearson*,
    683 F.3d 489 (4th Cir. 2012).........................................................................14

**Statutes:**

18 U.S.C. § 922(a)(1)(A) ...................................................................................1

18 U.S.C. § 922(o) ........................................................................................1, 3

18 U.S.C. § 3231 ...............................................................................................1

18 U.S.C. § 3742(a) ..........................................................................................1

26 U.S.C. § 5841 .......................................................................................1, 2, 3

26 U.S.C. § 5845 ..........................................................................................2, 3

26 U.S.C. § 5845(b) .........................................................................................18

26 U.S.C. § 5845(f).....................................................................................19, 21

26 U.S.C. § 5861(d) ...................................................................................1, 2, 3

26 U.S.C. § 5871 .......................................................................................1, 2, 3

28 U.S.C. § 1291 ...............................................................................................1

28 U.S.C. § 2255 .............................................................................................10

**Constitutional Provisions:**

U.S. Const. amend. II ................................................................................3

U.S. Const. amend. VI ........................................................................13, 14

**Rules:**

Fed. R. Crim. P. 16(1) .............................................................................4

Fed. R. Crim. P. 16(1)(C) .......................................................................16

Fed. R. Crim. P. 29 ...............................................................................8, 9

Fed. R. Evid. 702 ...................................................................................11

Fed. R. Evid. 703 ...................................................................................11

Fed. R. Evid. 705 ...................................................................................11

**Other Authorities:**

ABA Criminal Justice Standard 4-4.4......................................................13

ABA Criminal Justice Standard 4-4.5......................................................13

## **STATEMENT OF JURISDICTION**

This appeal arises from a judgment of the district court entered on June 27, 2023.  JA2269.[1]  Patrick Tate Adamiak ("Adamiak") filed his timely Notice of Appeal in the district court on June 27, 2023.  JA2275.  The district court had jurisdiction over this federal criminal case pursuant to 18 U.S.C. § 3231.  This Court has jurisdiction over the appeal from a final judgment pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291.

## **STATEMENT OF ISSUES PRESENTED**

I.    Adamiak's Counsel Provided Ineffective Assistance before and during trial.

## **STATEMENT OF THE CASE**

### **Procedural Overview**

On May 4, 2022, Adamiak, a U.S. Navy 1st Class (E-6) Petty Officer, was charged in an eleven (11) Count Indictment. JA15-20.  Count One charges Adamiak with Dealing Firearms Without a License, in violation of 18 U.S.C. § 922(a)(1)(A).  *Id.* Counts Two, Fourt, Six, Eight, and Ten charge him with receive and Possess an Unregistered Machinegun in violation of 26 U.S.C. § 5841, § 5861(d), and § 5871.  *Id.*  Counts Three, Five, Seven, Nine, and Eleven charge him with Unlawful Possession and Transfer of a Machinegun in violation of 18 U.S.C. § 922(o).  *Id.*  There is also a criminal forfeiture provision.  *Id.*

---

[1] References to the record are to the Joint Appendix and are denominated "JA__" followed by the designated page number.

Mr. Adamiak, represented by attorney David Michael Good, of Virginia Beach, Virginia, appeared before Magistrate Judge Robert J. Krask on April 13, 2022 and was released on an unsecured bond in the amount of $2,000.00. Subsequently an Agreed Order regarding discovery was entered on May 11, 2022. JA24-28.  Paragraph 8 of the Discovery Order required the defendant to disclose to the government "no later than ten business days before trial, a written summary of testimony the defendant intends to use under Rules 702, 703, and 705, FEDERAL RULES OF EVIDENCE, as evidence at trial unless the expert testimony is to be offered in response to a previously-noticed expert of the government, in which case the disclosure pursuant to this paragraph must be provided not later than five business days prior to trial."  JA26.  The summary was required to describe the witnesses' opinion, the bases and reasons therefor, and the witnesses' qualifications.  Trial by jury was scheduled to begin October 18, 2022.

Mr. Adamiak filed a Motion To Dismiss Counts 10 and 11 of the Indictment arguing that the two counts were multiplicitous.  JA29-34.  This Motion was granted by Order entered June 6, 2022.  JA34-36.

The Government presented additional information to the Grand Jury on June 23, 2022 and a Five (5) Count Superseding Indictment was returned.  JA37-41. Count One charges Adamiak with Receive and Possess an Unregistered Machinegun in violation of 26 U.S.C. §§ 5841, 5845, 5861(d) and 5871.  *Id.*

Count Two charges him with Unlawful Possession and Transfer of a Machinegun in violation of 18 U.S.C. § 922(o). *Id.* Counts Three, Four and Five charge him with Receive and Possess and Unregistered Destructive Device in violation of 26 U.S.C. §§ 5841, 5845, 5861(d) and 5871. *Id.* There is also a criminal forfeiture provision. *Id.*

On July 27, 2022 the Government filed a Motion *In Limine* to preclude and ignorance of the law defense. JA42-44. Adamiak responded to the Government Motion *In Limine*. JA74-76. After due consideration the District Court granted the Government's Motion *In Limine*. JA103-104. However, in her ruling United States District Judge Allen ruled that "Defendant may generally seek to introduce evidence on whether Defendant had the requisite factual knowledge of the alleged machinegun or destructive device's characteristics." *Id.*

Adamiak filed a Motion to Dismiss on August 8, 2022. JA46-73. Adamiak's Motion to Dismiss alleged the Government failed to state sufficient ultimate facts to allege a crime, vagueness and violations of the Second Amendment to the Constitution of the United States. *Id.* The Government responded to Adamiak's Motion to Dismiss. JA81-90. After due consideration of the Motion to Dismiss the District Court denied Adamiak's Motion to Dismiss. JA91-102.

In accord with the Joint Discovery Order (JA24-28) Counsel for Adamiak caused a Notice of Expert Witness to be served on Counsel for the Government on

3

October 10, 2022 (JA115-117), which was 8 days prior to trial. Adamiak indicated

he would call Daniel G. O'Kelly ("O'Kelly") as an expert witness during the trial

of the case. Adamiak proffered that O'Kelly would testify as to the model PPSh41

machinegun and it was his opinion that the PPSH41 in this case could not be

readily restored to shoot, automatically more than on shot, without manual

reloading, by a single function of a trigger. JA115-117. O'Kelly would opine that

the alleged destructive devices were not subject to regulation and were deactivated

and/or inoperable. *Id.* Accompanying the Notice of Expert Witness was the

*curriculum vitae* of O'Kelly. JA118-127. The bases and reasoning supporting the

opinions of O'Kelly were not provided, as required by the Joint Discovery Order,

to the Government.

As a consequence of the deficiencies in the Notice of Expert Witness filed

by counsel for Adamiak, the Government filed a Motion *In Limine* to exclude the

trial testimony of Adamiak's proposed expert witness. JA105-340. The

Government motion asserted a failure to meet the requirements of Fed. R. Crim. P.

16(1), failure to establish O'Kelly as a reliable expert or that his opinion is based

on any sort of reliable principle or method. Curiously the Government did not

raise the issue of the untimeliness of the notice as required by the Joint Discovery

Order. *Id.* Counsel for Adamiak responded to the Government's Motion *In Limine*

now asserting that O'Kelly would be called only as a rebuttal witness to the

Government's expert witness based solely on rebuttal evidence. JA341-344. After
due consideration the District Court denied, with restrictions, the Government's
Motion *In Limine* regrading the expert testimony of O'Kelly as a rebuttal witness.
JA356-358. The District Court addressed the Defendant's obligation to disclose
the written summary of expert testimony 10 business days before trial, which
required the notice on or before October 3, 2022 in footnote 1 of her Order.
However, since neither party raises the late Notice as an issue in the briefing the
District Court declined to address the issue at that time. JA356.

### Trial Evidence

The case began on October 18, 2022 with pretrial matters, jury selection and
opening statements by the Government and Adamiak. Witness testimony began on
October 19, 2022. The Government's first witness was William Hairston, a special
agent ("SA Hairston") of the Bureau of Alcohol, Tobacco, Firearms and Explosives
("ATF"). SA Hariston testified that he engaged the services of a confidential
informant ("CI") in the investigation leading up to the Indictment of Adamiak.
JA371.

Using the services of the CI, SA Hairston testified that an item identified as a
single saw cut PPSH-41 machine gun receiver was purchase and received from
Adamiak on or about November 17, 2021. JA373 and JA2286. Five (5) single
saw cut PPSH-41 machine gun receivers were purchased and received from

Adamiak on or about November 23, 2021.  JA378-382 and JA2291-2205.  One (1)

RPD single saw cut machinegun receiver was purchased from Adamiak on or

about December 5, 2021.  JA383-386 and JA2299.  The parts for a complete

PPSH-41 machinegun were purchased on or about March 23, 2022.  JA387-390

and JA2305-2306.

SA Hairston applied for and executed a search warrant on the two (2)

addresses of Adamiak following the purchase of March 23, 2022.  JA392.  The

purpose of the search was to locate machineguns and destructive devices.

SA Hairston testified regarding items found during the search could be

assembled and made into the M79 40mm grenade launcher, the basis for Count

Three of the Indictment [JA394; JA2308]; the M203 40mm grenade launcher, the

basis for Court Four of the Indictment [JA396; JA2309; and the RPG-7 missile

launcher [JA400; JA2314].

SA Hairston testified that he was no an expert in machinegun receivers.  He

provided testimony that all the items he identified as a machinegun receiver had

been cut into two pieces.  He testified that the barrels and receivers that were the

basis for Counts Three and Four of the Indictment were lawfully purchased by

Adamiak through a firearms dealer and that when found they were separate and

located in different parts of the premises and that it was, he who assembled the

pieces into a completed grenade launcher.  JA449-460.

Ronald K. Davis, ATF Firearms and Ammunition Technology Division ("Agent Davis"), was qualified as an expert witness in firearms classification, identification and firearm compliance within the parameters of the National Firearms Act.  JA567-575.  Agent Davis presented testimony regarding the PPSH-41 machinegun which is the subject of Counts One and Two of the Indictment. Included in his testimony, without objection, was his report, Exhibit 120, which contained legal conclusions beyond the scope of expert testimony.  JA580; JA2454-2464.  As a result of the PPSH-41 machinegun received obtained from Adamiak being cut into two parts and nonfunctional, Agent Davis testified as to ATF's acceptable destruction requirements for machinegun receivers.  JA586. Agent Davis testified regarding the characteristics of the PPSH-41 machinegun, including the fact that the parts would have to be reassembled to make a fully functional operating machinegun.  JA595-600.

Jeff Bodell, ATF Firearms Enforcement Officer (Officer Bodell), was qualified as an expert witness in the classification and identification of firearms as it relates to the National Firearms Act.  JA626-632.  Included in his testimony, without objection, was his report, exhibit 121, which contained legal definitions and conclusions beyond the scope of expert testimony.  JA2465-2510.  Officer Bodell's testimony was that the items he received for examination constituting the charges in Counts Three, Four and Five of the Indictment had to be modified for

7

restoration purposes. Only after he made the modifications could he test fire the items he opined were destructive devices. JA633-639. Officer Bodell testified that the RPG-7's made the subject of Count 5 of the Indictment did not have a complete fire control assembly, including gut not limited to a firing pin, and in order to make the RPG-7's functional he had to obtain a complete fire control assemble from the National Firearms Collection to create a functional RPG-7. JA664-666. Officer Bodell testified that the subject items of Counts Three and Four of the Indictment has to be reassembled for firing purposes and in the event the barrels were 37-38 mm they would not be considered a destructive device by ATF definitions. JA670.

Christopher Schramm, Operations Manager at DOA Arms ("Schramm") testified that DOA Arms was a firearm retailer. Schramm had known Adamiak, a customer of DOA Arms, approximately six (6) years. Schramm testified that Adamiak had legally transferred the M79 receiver for a 40mm launcher, the device named in Count Three of the Indictment, to himself in March, 2022. Earlier Adamiak had legally transferred the M203 receiver for a 40mm launcher, the device named in Count Four of the Indictment, to himself. JA693-695.

At the conclusion of the Government's evidence Adamiak moved to dismiss all charges pursuant to Rule 29 of the Federal Rules of Criminal Procedure, for insufficiency of the evidence. He further argued that the government had proven that he knowingly possessed a machinegun or destructive device as required by

*United States v. Thompson/Center Arms Co.*, 504 U.S. 505, 112 S. Ct. 2102, 119 L. Ed. 2d 308 (1992) and *Staples v. United States*, 511 U.S. 600, 114 S. Ct. 1793, 128 L. Ed. 2d 608 (1994).  The District Court denied the motion to dismiss.  JA762-774.

Adamiak elected not to present expert testimony.  After being examined by the District Court regarding his right to testify in his own behalf, Adamiak elected not to testify.  JA774-775.

The jury was then instructed (JA800-824).  After due deliberations the Jury returned a verdict of guilty as to all counts contained in the Superseding Indictment.  JA836.  After receiving the verdict of guilty Adamiak renewed his F.R.C.P. 29 Motion to dismiss for the reasons stated in the record.  JA834.  The renewed F.R.C.P. 29 Motion to Dismiss was denied by the District Court for the reasons stated in the record.  JA834.

Sentencing was scheduled for March 31, 2023 (JA831) and a Sentencing Procedures Order, executed by counsel and Adamiak, was entered October 21, 2022.  JA838-840.

## SUMMARY OF THE ARGUMENT

Adamiak's retained trial counsel provided ineffective assistance before and during trial by his failure to timely meet filing deadlines for the purposes of identifying expert witnesses and other witnesses.  Trial counsel failed to call an

expert witness on behalf of Adamiak to rebut the testimony of Government expert witnesses.

There was insufficient evidence to prove beyond a reasonable doubt that Adamiak possessed an unregistered machinegun or an unregistered destructive device.

## **ARGUMENT**

## I. ADAMIAK'S COUNSEL PROVIDED INEFFECTIVE ASSISTANCE BEFORE AND DURING TRIAL.

### A.    Standard of Review

An ineffective assistance of counsel claim is cognizable on direct appeal only when the record conclusively demonstrates that the defense lawyer failed to provide effective representation. *See United States v. Benton*, 523 F.3d 424, 435 (4th Cir. 2008). Normally, a claim of ineffective assistance of counsel should be raised by a motion under 28 U.S.C. § 2255. *United States v. Fisher*, 477 F.2d 300, 302 (4th Cir. 1973). Nonetheless, there may be cases where this Court will entertain such claims on direct appeal "where the record conclusively establishes ineffective assistance." *United States v. Baptiste*, 596 F.3d 214, 216 n.1 (4th Cir. 2010). Where, as here, an "ineffective assistance of counsel claim rests on trial counsel's failure to call particular witnesses, expert or otherwise, [this Court] require[s] 'a specific proffer . . . as to what an expert witness would have testified.'" In his Notice of Expert Witness (JA115-117) Adamiak proffered that

Daniel G. O'Kelly a former ATF senior special agent and expert in the

identification, operation, and design of firearms, including machineguns and

destructive devices would testify to the history of the Model PPSh41, and it was

his (O'Kelly's) opinion that the PPSH41 in this case cannot be readily restored to

shoot, automatically more than one shot, without manual reloading, by a single

function of a trigger.  Mr. O'Kelly further opined that to functionally destroy a

M79 and M203 so that they could be used as non-firearm display pieces, requires a

person to obtain both the barrel and the receiver, O'Kelly would further opine that

the RPG7's in this case were deactivated and inoperable and that the M230 and

M79 in this case were removed from the purview of the NFA by virtue of the

barrels being removed prior to Adamiak's possession of same.  *Vandross v. Stirling*,

986 F.3d 442, 452 (4th Cir. 2021) (quoting *Goins v. Warden, Perry Corr. Inst.*, 576

F. App'x 167, 173 (4th Cir. 2014) (per curiam)) (alterations in original).  Since

Adamiak's ineffective assistance claim is made on direct appeal, this Court will

review it *de novo.  United States v. Freeman*, 24 F.4th 320, 326 (4th Cir. 2022); *see

also United States v. Faulls*, 821 F.3d 502, 507-08 (4th Cir. 2016), *United States v.

Mandello*, 426 F.2d 1021, 1023 (4th Cir. 1970).  The failure of trial counsel to

timely comply with the expert witness notice as set forth in paragraph 8 of the

Discovery Order (JA24-28) and Federal Rules of Evidence 702, 703, and 705 and

the Sentencing Procedures Order (JA838-840) the failure to comply with orders of

the court regarding the admission of evidence is a significant factor in evaluating counsel's performance.  Under *Strickland*, we first determine whether counsel's representation "fell below an objective standard of reasonableness." 466 U.S., at 688, 104 S. Ct. 2052, 80 L. Ed. 2d 674. Then we ask whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*, at 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674. The first prong--constitutional deficiency--is necessarily linked to the practice and expectations of the legal community: "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Id.*, at 688, 104 S. Ct. 2052, 80 L. Ed. 2d 674. We long have recognized that "[p]revailing norms of practice as reflected in American Bar Association standards ("ABA Criminal Justice Standards") and the like . . . are guides to determining what is reasonable . . . ." *Ibid.;* **[\*367]** *Bobby v. Van Hook*, 558 U.S. 4, 7, 130 S. Ct. 13, 175 L. Ed. 2d 255 (2009) *(per curiam)*; *Florida v. Nixon*, 543 U.S. 175, 191, and n. 6, 125 S. Ct. 551, 160 L. Ed. 2d 565 (2004); *Wiggins v. Smith*, 539 U.S. 510, 524, 123 S. Ct. 2527, 156 L. Ed. 2d 471 (2003); *Williams v. Taylor*, 529 U.S. 362, 396, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).  Although they are "only guides," *Strickland*, 466 U.S., at 688, 104 S. Ct. 2052, 80 L. Ed. 2d 674, and **[\*\*\*\*20]** not "inexorable commands," *Bobby*, 558 U.S., at 8, 130 S. Ct. 13, 175 L. Ed. 2d 255, these standards may be valuable measures of the prevailing

12

professional norms of effective representation, especially as these standards have been adapted to deal with the intersection of modern criminal prosecutions. ABA Criminal Justice Standard 4-4.4 Relationship With Expert Witnesses provides that Defense counsel should know relevant rules governing expert witnesses, including possibly different disclosure rules governing experts who are engaged for consultation only. ABA Criminal Justice Standard 4-4.5 Compliance With Discovery provides that Defense counsel should timely respond to legally proper discovery requests, and make a diligent effort to comply with legally proper disclosure obligations, unless otherwise authorized by a court.

In this case, trial counsel provided ineffective assistance in failing to call as a witness Daniel G. O'Kelly, whom trial counsel had named in Adamiak's October 10, 2022 Notice of Expert Witness as a firearms expert. JA24-28;

## B. The Conduct of Adamiak's Counsel Was Ineffective Under *Strickland.*

The Constitution guarantees effective assistance of counsel in criminal cases. U.S. Const. amend. VI; *Strickland v. Washington*, 466 U.S. 668, 685, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984) ("The Constitution guarantees a fair trial through the Due Process Clauses, but it defines the basic elements of a fair trial largely through the several provisions of the Sixth Amendment, including the Counsel Clause."). The Sixth Amendment guarantees the defendant in a criminal case the right to effective assistance of counsel to help ensure that our adversarial

13

system produces just results. *Strickland*, 466 U.S. at 685. Consequently, the Sixth Amendment requires that "counsel act [] in the role of an advocate." *United States v. Cronic*, 466 U.S. 648, 656, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984). A finding of ineffective assistance ultimately will result when counsel's conduct "so undermined the proper functioning of the adversarial process" that the proceedings below "cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

To succeed on a claim of ineffective assistance of counsel, Adamiak must show that: (1) counsel's performance fell below an objective standard of reasonableness (the performance prong); and (2) the deficient representation prejudiced the defendant (the prejudice prong). *Id.* at 687-88. The performance prong is satisfied when counsel provides reasonably effective assistance, including demonstrating legal competence, doing relevant research, and raising important issues. *See id.* at 687-90; *Winston v. Pearson*, 683 F.3d 489, 504 (4th Cir. 2012); *Ramirez v. United States*, 799 F. 3d 845, 855 (7th Cir. 2015). A court typically evaluates claims of ineffective assistance of counsel on collateral review, *see United States v. Ford*, 88 F.3d 1350, 1363 (4th Cir. 1996), and "judicial scrutiny of counsel's performance must be highly deferential," *Roe v. Flores-Ortega*, 528 U.S. 470, 477, 120 S. Ct. 1029, 145 L. Ed. 2d 985 (2000) (citation and alteration omitted). However, appellate review "does not countenance 'omissions [that] were

14

outside the wide range of professionally competent assistance.'" *United States v. Carthorne*, 878 F.3d 458, 465 (4th Cir. 2017) (citing *Strickland,* 466 U.S. at 690). Competent performance is evaluated by reference to the reasonableness of counsel's decisions under "professional norms." *Padilla v. Kentucky*, 559 U.S., 366-67, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010).

In this case, trial counsel provided ineffective assistance in failing to call as a witness Daniel G. O'Kelly, whom trial counsel had named in Adamiak's October 10, 2022 Notice of Expert Witness as a firearms expert.  JA24-28;

Mr. O'Kelly's expertise was developed over the course of 40 years as a police officer, Alcohol, Tobacco and Firearms ("ATF" agent/firearms specialist, criminal investigator, range instructor, teacher of firearm technology, ammunition and firearm manufacturer, and firearms collector.  JA118-127, (Resume of Daniel G. O'Kelly).  This testimony was critical to exonerating Adamiak, because it would have assisted the jury in understanding what is and is not a machinegun or destructive device and what is needed to construct a weapon from components.

The record conclusively establishes that trial counsel's performance was deficient and that the deficient performance prejudiced Adamiak.  "An attorney's failure to present available exculpatory evidence is ordinarily deficient, 'unless some cogent tactical or other consideration justified it.'"  *Griffin v. Warden, Maryland Corr. Adjust. Ctr.*, 970 F.2d 1355, 1358 (4th Cir. 1992) (quoting

*Washington v. Murray*, 952 F.2d 1472, 1476 (4th Cir. 1991)).  In *Griffin,* this Court

easily found that trial counsel's performance was deficient, since the record

suggested "no reasonable excuse for failing to notify the state of [defendant]'s alibi

and to secure the attendance of alibi witnesses."  *Id.*

There is no "cogent tactical or other consideration" justifying trial counsel's

failure to present the exculpatory evidence of Mr. O'Kelly which would have

helped the jury evaluate whether the unassembled components in Adamiak's

possession could have readily been converted into the unregistered firearms,

machineguns, and destructive devices for which he was prosecuted.  Indeed, trial

counsel clearly recognized the need for such testimony, but he failed to timely file

the Notice of Expert Witness 10 days prior to trial as directed by paragraph 8 of the

District Court's Discovery Order (JA24-28 [ECF 21] Discovery Order)[2] or 7 days

prior to sentencing as directed by paragraph 8 and 9 of the Sentencing Procedures

Order.  JA838-840.  In response to the Government's argument that the Notice of

Expert Witness did not comply with the requirements of Rule 16(1)(C) of the

Federal Rules of Criminal Procedure, trial counsel responded that Mr. O'Kelly was

only being called as a rebuttal witness  (JA341-345 [ECF57], Opposition to

---

[2]  The district court did not address the lateness of the Notice of Expert Witness in
denying the Government's motion to exclude Mr. O'Kelly's testimony because
neither the Government nor Appellant mentioned the timing in addressing the
Government's motion.  However, the district court pointedly noted the lateness in a
footnote in its order denying the Government's motion.  (JA356 [ECF 58, Order
Denying Government's Motion to Exclude Expert Witness at 1, n.1].)

Government's motion at 1], even though he did not so state in the Notice of Expert Witness, which drew the district court's irritation (JA356-358 [ECF58], Order Denying Government's Motion at 2].  It is plain that trial counsel reduced Mr. O'Kelly's testimony to rebuttal evidence only to overcome possible deficiencies in the notice itself.  And then he declined to offer Mr. O'Kelly's testimony on rebuttal, leaving the Government's construction of the evidence to stand unrebutted or contradicted, thus denying Adamiak due process depriving him of a fair trial. That Mr. O'Kelly's testimony was critical is made clear by the fact that the district court allowed trial counsel to put on the testimony of Mr. O'Kelly at the sentencing hearing, over the objection of the Government, even though, once again, trial counsel had failed to comply with an order of the court regarding notice to the Government, this time the Sentencing Procedures Order requiring that counsel for each side should file a Position Paper detailing, inter alia, evidence to be presented at sentencing seven days in advance of the sentencing hearing.  JA838-841 [ECF66 Sentencing Procedures Order at 2 ¶¶8-9; [Sentencing Hearing Transcript at JA2113-2118.)

This deficient performance plainly prejudiced Appellant because he was convicted without the opportunity to challenge the Government's evidence in matters that required a technical understanding of the operation and construction of firearms that was beyond the experience and knowledge of the jury.

17

There is no "cogent tactical or other consideration" justifying trial counsel's failure to present the exculpatory evidence of Mr. O'Kelly which would have helped the jury evaluate whether the unassembled components in Appellant's possession could have readily been converted into the unregistered firearms, machineguns, and destructive devices for which he was prosecuted. Indeed, trial counsel clearly recognized the need for such testimony, but he failed to timely file the Notice of Expert Witness 10 days prior to trial as directed by paragraph 8 of the district court's discovery order

## II. THERE WAS INSUFFICIENT EVIDENCE TO PROVE BEYOND A REASONABLE DOUBT THAT APPELLANT POSSESSED AN UNREGISTERED MACHINEGUN OR AN UNREGISTERED DESTRUCTIVE DEVICE.

### A. There Was Insufficient Evidence to Prove That the Components in Appellant's Possession Could be Readily Restored to Shoot.

The term "machinegun" means any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. 26 U.S.C. § 5845(b). Whether a weapon can be readily restored to shoot automatically involves a factual inquiry into "the level of expertise required to restore the weapon . . . [as well as] the time, equipment, and cost necessary to restore the weapon." *United States v. Kelly*, 276 F. App'x 261, 267 (4th Cir. 2007), *cert. denied*, 554 U.S. 932 (2008). In Kelly, for example, this Court found that even though the MKS M-14s could not

shoot automatically when they were seized by the Government, they could be readily restored to shoot automatically because and an ATF agent was able to modify the weapon in about 50 minutes using three common tools, "including a Dremmel drill, a carbide burr, and a Tig welder . . . [and] the spare parts used to restore the weapon could be purchased for approximately $79.00." *Id.* In contrast, a district court sitting in the District of Columbia held that a machinegun was not readily restorable where it would take "an expert gunsmith working in a fully equipped gun shop with tools and equipment costing approximately $65,000 . . . at least 30 hours to plan and achieve the conversion . . . to full automatic fire." *United States v. Seven Miscellaneous Firearms*, 503 F. Supp. 565, 575 (D.D.C. 1980)

### B. There Was Insufficient Evidence to Prove That Adamiak possessed Parts From Which A Destructive Device Could Be Readily Assembled

The term "destructive device" means, inter alia, "any combination of parts either designed or intended for use in converting any device into a destructive device . . . and from which a destructive device may be readily assembled." 26 U.S.C. § 5845(f). This Court has recognized that in order for a destructive device to be "readily assembled," "[a] defendant must possess every essential part necessary to construct a destructive device." *United States v. Blackburn*, 940 F.2d 107, 110 (4th Cir. 1991) (emphasis in original) ( following *United States v. Malone*,

19

546 F2d 1182 (5th Cir. 1977) (conviction for possession of an unregistered grenade reversed because defendant did not possess gunpowder to arm it). In *Blackburn,* for example, defendant purchased what he thought were 30 live grenades, but because only two of the grenades had powder, he could be sentenced for possession of only two destructive devices. In contrast, in *United States v. Simmons*, 83 F.3d 686 (4th Cir. 1996), this Court rejected the defendant's argument that for lack of a match he could not be convicted of possession of a Molotov cocktail, a destructive device, and affirmed his conviction, noting that the glass bottle with a cloth fuse "contained the requisite explosive material, the gasoline." *Id.* at 688.

Whether components intended to construct a pipe bomb were a destructive device was a key issue in an appeal of the courts martial to the Army Court of Criminal Appeals. In that case, the member of service clearly intended to make a pipe bomb at some future time. He obtained the instructions on how to do so from an internet source. He bought the black powder explosive component from a local store. He bought the pipe and end caps for the pipe and some drill bits to make holes in the end caps from a local hardware store. But appellant did not procure any fusing or fuse material. And the end caps were not drilled out for a fuse because although appellant purchased drill bits, he did not possess a drill. *United States v. Enright*, ARMY 20030379, 2005 CCA Lexis 627, *4 (U.S. Army Ct.

20

Crim. App. Apr 20, 2005)  Relying on the Fifth Circuit decision in *Malone,* also relied on by this Court in *Blackburn,* the court found that "because [the defendant] did not have a drill which was required to put fuse holes in the end caps and he lacked fusing material . . . the component parts appellant gathered could not have been readily assembled into a 'destructive device' as that term is defined in 26 U.S.C. § 5845(f)," and dismissed the offense.  *Id.* at \*\*4-5.  There was no evidence presented that Adamiak had the necessary skills, or equipment necessary to readily assemble the components in his possession into an destructive device.

## **CONCLUSION**

For the foregoing reasons Adamiak's conviction on Counts 1, 2, 3, 4 and 5 should be reversed.  At minimum, Adamiak's convictions on each count should be vacated and the matter remanded for a new trial.

## **REQUEST FOR ORAL ARGUMENT**

Pursuant to Federal Rule of Appellate Procedure 34(a) and Fourth Circuit Local Rule 34(a), Defendant-Appellant Patrick Tate Adamiak, respectfully requests that the Court hear oral argument in this matter to aid the decisional process.

Dated: January 5, 2023                     Respectfully submitted,

                                                                    */s/ Dennis E. Jones*
                                                                    Dennis E. Jones, Esq.

                                                                    *Counsel for Appellant*

21

## **CERTIFICATE OF COMPLIANCE**

1.    This document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

this document contains 4,906 words.

2.    This document complies with the typeface requirements because:

This document has been prepared in a proportional spaced typeface using Microsoft Word in 14-point Times New Roman.

Dated: January 5, 2024

/s/ Dennis E. Jones
Dennis E. Jones, Esq.
VA State Bar# 14007
DENNIS E. JONES, PLC
230 Charwood Drive, STE A
Abingdon, VA  24210
(276) 619-5005
FAX: (276) 619-5007

Counsel for Appellant