**No. 23-4451**

# In the
# United States Court of Appeals
# for the Fourth Circuit

◆

PATRICK TATE ADAMIAK,

*Defendant-Appellant*,

v.

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*.

◆

**Appeal from the United States District Court
for the Eastern District of Virginia
No. 2:22-cr-00047 (Hon. Arenda L. Wright Allen)**

◆

**BRIEF OF *AMICI CURIAE* FIREARMS POLICY
COALITION AND FPC ACTION FOUNDATION IN
SUPPORT OF APPELLANT AND REVERSAL**

◆

JOSEPH G.S. GREENLEE
GREENLEE LAW, PLLC
PO Box 4061
McCall, ID 83638
(208) 271-2494
joseph@greenlee.law

Counsel for *Amici Curiae*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, *Amici Curiae* make the following statements:

Firearms Policy Coalition has no parent corporation, and as a nonstock nonprofit corporation, no publicly held corporation could own any share of its stock.

FPC Action Foundation has no parent corporation, and as a nonstock nonprofit corporation, no publicly held corporation could own any share of its stock.

/s/ *Joseph G.S. Greenlee*
Counsel for *Amici Curiae*

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ............................................. i

TABLE OF CONTENTS ................................................................. ii

TABLE OF AUTHORITIES ............................................................ iii

STATEMENT OF *AMICI CURIAE* ...................................................... 1

CONSENT TO FILE ....................................................................... 2

SUMMARY OF ARGUMENT ............................................................ 3

ARGUMENT ............................................................................... 5

    I. The Gun Control Act of 1968 generally does not authorize the regulation of gun parts ............................................................. 5

        A. The "frame or receiver" is the only gun part included in the definition of "firearm." ........................................................ 5

        B. The term "frame or receiver" has always had a very specific meaning under the GCA. ...................................................... 7

    II. The government must also prove that Adamiak *knew* that he possessed a National Firearms Act-regulated "firearm." ........... 11

    III. The district court erred by declining to apply the rule of lenity ...................................................................................... 15

        A. Ambiguous criminal statutes must be resolved in favor of the accused. ........................................................................ 16

        B. The rule of lenity applies to statutes that have both criminal and civil applications. ................................................ 18

CONCLUSION ............................................................................ 22

CERTIFICATE OF COMPLIANCE .................................................... 23

CERTIFICATE OF SERVICE ............................................................ 24

# TABLE OF AUTHORITIES

## Cases

*Allison Engine Co. v. U.S. ex rel. Sanders,*
  553 U.S. 662 (2008) ............................................................... 10

*Cargill v. Garland,*
  57 F.4th 447 (5th Cir. 2023) ......................................... 17, 21

*Clark v. Martinez,*
  543 U.S. 371 (2004) ............................................................... 20

*Crandon v. United States,*
  494 U.S. 152 (1990) ............................................................... 17

*Leocal v. Ashcroft,*
  543 U.S. 1 (2004) ............................................................ 19, 20

*Liparota v. United States,*
  471 U.S. 419 (1985) ............................................................... 17

*McNally v. United States,*
  483 U.S. 350 (1987) ............................................................... 16

*Morissette v. United States,*
  342 U.S. 246 (1952) ............................................................... 14

*N.C. Dep't of Env't Quality v. FERC,*
  3 F.4th 655 (4th Cir. 2021) ................................................. 10

*Staples v. United States,*
  511 U.S. 600 (1994) ..................................................... *passim*

*United States v. Anderson,*
  885 F.2d 1248 (5th Cir. 1989) ............................................. 14

*United States v. Bass,*
  404 U.S. 336 (1971) ......................................................... 16, 21

*United States v. Davis,*
  588 U.S. 445 (2019) ............................................................... 18

*United States v. George,*
  946 F.3d 643 (4th Cir. 2020) ........................................................ 16, 21

*United States v. Hosford,*
  843 F.3d 161 (4th Cir. 2016) ............................................................. 6

*United States v. Thompson/Ctr. Arms Co.,*
  504 U.S. 505 (1992) ........................................... 16, 18, 19, 20

*United States v. Wiltberger,*
  18 U.S. 76 (1820) ............................................................................. 17

*United States v. Wong Kim Bo,*
  472 F.2d 720 (5th Cir. 1972) ............................................................ 10

*VanDerStok v. Garland,*
  86 F.4th 179 (5th Cir. 2023) ........................................................ 7, 11

*Whitman v. United States,*
  574 U.S. 1003 (2014) ...................................................................... 20

## Statutes and Regulations

8 U.S.C. § 1101, *et seq.* ................................................................... 19

8 U.S.C. § 1227(a)(2)(A)(iii) ............................................................. 19

18 U.S.C. § 16 ................................................................................... 19

18 U.S.C. § 921 ................................................................................... 7

18 U.S.C. § 921(a)(3) .......................................................................... 6

18 U.S.C. § 921(a)(3)(A) ..................................................................... 7

18 U.S.C. § 921(a)(4) .......................................................................... 6

18 U.S.C. § 921(a)(4)(A) ..................................................................... 9

18 U.S.C. § 921(a)(4)(C) .................................................................... 10

18 U.S.C. § 921(a)(16) ......................................................................... 6

18 U.S.C. § 921, *et seq.* .............................................................. 6

18 U.S.C. § 923(i) ......................................................................... 9

26 C.F.R. pt. 178 ........................................................................... 8

26 C.F.R. pt. 179 ........................................................................... 8

26 U.S.C. § 5801, *et seq.* ........................................................... 11

26 U.S.C. § 5845(a) ..................................................................... 12

26 U.S.C. § 5861(d) ............................................................... 12, 13

26 U.S.C. § 5871 ......................................................................... 12

27 C.F.R. § 478.12(c) .................................................................... 7

33 Fed. Reg. 18555 ........................................................................ 8

36 Fed. Reg. 14255 ........................................................................ 8

87 Fed. Reg. 24652 ........................................................................ 8

H.R. 1278, 115th Cong. (2017) ...................................................... 7

H.R. 6643, 115th Cong. (2018) ...................................................... 7

Pub. L. No. 75-785, 52 Stat. 1250 (1938) ...................................... 5

S. 3300, 115th Cong. (2018) .......................................................... 7

S. Rep. No. 90-1097 (1968) ..................................................... 7, 21

## Other Authorities

Friendly, Henry J., *Mr. Justice Frankfurter and the Reading of Statutes*, *in* Benchmarks (1967) ......................................... 21

Olson, John, OLSON'S ENCYCLOPEDIA OF SMALL ARMS (1985) ................. 8

WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1971) ..................... 8

## STATEMENT OF *AMICI CURIAE*[1]

**Firearms Policy Coalition ("FPC")** is a nonprofit membership organization that works to create a world of maximal human liberty and freedom. It seeks to protect, defend, and advance the People's rights, especially but not limited to the inalienable, fundamental, and individual right to keep and bear arms. FPC accomplishes its mission through legislative and grassroots advocacy, legal and historical research, litigation, education, and outreach programs. Since its founding in 2014, FPC has emerged as a leading advocate for individual liberty in state and federal courts, regularly participating as a party or *amicus curiae*.

**FPC Action Foundation ("FPCAF")** is a nonprofit organization dedicated to preserving the rights and liberties protected by the Constitution. FPCAF focuses on research, education, and legal efforts to inform the public about the importance of constitutional rights—why they were enshrined in the Constitution and their continuing significance. FPCAF is determined to ensure that the freedoms

---

[1] No counsel for a party authored this brief in any part. No party or counsel contributed money intended to fund its preparation or submission. No person other than *amici* and their members contributed money intended to fund its preparation or submission.

1

guaranteed by the Constitution are secured for future generations. FPCAF's research and *amicus curiae* briefs have been relied on by judges and advocates across the nation.

## CONSENT TO FILE

All parties consented to the filing of this brief.

## SUMMARY OF ARGUMENT

The Gun Control Act of 1968 repealed and replaced the Federal Firearms Act of 1938. While the Federal Firearms Act included gun parts in its definition of "firearm," the Gun Control Act deliberately did not. Congress found it impractical to regulate each small part of a firearm and instead included in the Gun Control Act's definition of "firearm" only a single part—the "frame or receiver." Because parts alone cannot constitute a firearm, the government must prove that Adamiak possessed more than mere parts. Specifically, the government must demonstrate that Adamiak possessed an actual "frame or receiver" that falls within the statutory definition of "firearm." The government failed to do so.

What is more, even if Adamiak did possess an item that could be regulated as a "firearm," to convict Adamiak under the National Firearms Act of 1934, Supreme Court precedent requires the government to prove that Adamiak *knew* that he possessed something that met the definition of a "firearm" *and* that it contained characteristics that brought it within the scope of the National Firearms Act's scope. The government failed to prove either.

Because Congress deliberately declined to regulate individual gun parts—except for the "frame or receiver"—as "firearms," it is evident that those parts cannot be "firearms" in and of themselves. But even if the definition of "firearm" does not unambiguously exclude gun parts, their inclusion is at the very least ambiguous. And as both this Court and the Supreme Court have repeatedly held, the rule of lenity requires that said ambiguity be resolved in favor of lenity for the accused. The district court, however, declined to apply the rule of lenity, instead leaving it to the jury to interpret the statute.

In sum, the government failed to prove that Adamiak possessed something that meets the federal definition of a "firearm"—let alone that he did so knowingly. And the government failed to further prove that the item contained characteristics that brought it within the scope of the National Firearms Act—let alone that he knew it contained those characteristics. Amplifying these issues, the district court then failed to resolve any legal ambiguity in the interpretation of federal law in favor of Adamiak, as it should have. The district court's judgment should therefore be reversed.

4

# ARGUMENT

## I. The Gun Control Act of 1968 generally does not authorize the regulation of gun parts.

The Gun Control Act of 1968 ("GCA") regulates "firearms." "Firearm" is defined in the statute. Aside from a single exception discussed below, the definition of "firearm" does not encompass mere parts. In fact, ensuring that gun parts do not constitute a "firearm" was a specific reason for Congress's adoption of the GCA in the first place.

### A. The "frame or receiver" is the only gun part included in the definition of "firearm."

Prior to the GCA, in 1938, Congress passed the Federal Firearms Act ("FFA"), which defined a "firearm" as "any weapon, by whatever name known, designed to expel a projectile or projectiles by the action of an explosive and a firearm muffler or firearm silencer, *or any part or parts of such weapon*." Federal Firearms Act of 1938, Pub. L. No. 75-785, 52 Stat. 1250, 1250 (1938) (repealed 1968) (emphasis added). The FFA regulated the shipment, transportation, and receipt of firearms and ammunition. *Id.* at 1250–52.

Congress enacted the GCA thirty years later, in 1968. The GCA provided a new definition of what constitutes a firearm, which

5

superseded the FFA's definition. *See* 18 U.S.C. § 921, *et seq.*; *United States v. Hosford*, 843 F.3d 161, 167 (4th Cir. 2016). The GCA redefined "firearm" as follows:

> The term "firearm" means (A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device.[2] Such term does not include an antique firearm.[3]

18 U.S.C. § 921(a)(3). Notably, the phrases "designed to" and "may readily be converted to" appear only within subsection A, not prior to the breakdown of subsections nor anywhere else in the definition.

In enacting the GCA, Congress deliberately deleted the phrase "any part or parts of such weapon" from the definition of "firearm":

> Under the [FFA's] definition of 'firearm', any part or parts of such a weapon are included. It has been found that it is impractical to have controls over each small part of a firearm. Thus, the revised definition substitutes only the major parts of the firearm; that is, frame or receiver for the words 'any part or parts.'

---

[2] "Destructive device" refers to explosive, incendiary, or poison gas bombs, grenades, mines, and other similar devices. 18 U.S.C. § 921(a)(4).

[3] "Antique firearm" includes any firearm manufactured in or before 1898 and certain replicas of such firearms. 18 U.S.C. § 921(a)(16).

S. Rep. No. 90-1097, at 2200 (1968). In recent years, Congress has considered but declined to enact proposed legislation that would have redefined "firearm." *See, e.g.*, *Ghost Guns Are Guns Act*, H.R. 1278, 115th Cong. (2017); *Untraceable Firearms Act of 2018*, H.R. 6643, 115th Cong. (2018); *Untraceable Firearms Act of 2018*, S. 3300, 115th Cong. (2018).

### B. The term "frame or receiver" has always had a very specific meaning under the GCA.

The only individual part that is designated a "firearm" under the GCA is the "frame or receiver" of a weapon that falls within the scope of 18 U.S.C. § 921(a)(3)(A). Neither "frame" nor "receiver" is defined in 18 U.S.C. § 921. Contemporaneous regulations, however, defined a "frame or receiver" as "[t]hat part of a firearm which provides housing for the hammer, bolt or breechblock, and firing mechanism, and which is usually threaded at its forward portion to receive the barrel."[4] *Commerce in*

---

[4] In 2022, the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") promulgated a rule changing this definition to cover items that "include a partially complete, disassembled, or nonfunctional frame or receiver, including a frame or receiver parts kit, that is designed to or may readily be completed, assembled, restored, or otherwise converted to function as a . . . receiver." 27 C.F.R. § 478.12(c). In a challenge to this rule, the Fifth Circuit held that the ATF exceeded "the statutory text's existing limits" in "alter[ing] the language of the" GCA. *VanDerStok v. Garland*, 86 F.4th 179, 197 (5th Cir. 2023), *cert. granted*, No. 23-852 (U.S.

7

*Firearms and Ammunition*, 33 Fed. Reg. 18555, 18558 (Dec. 14, 1968) (codified at 26 C.F.R. pt. 178); Machine Guns, Destructive Devices, and Certain Other Firearms, 36 Fed. Reg. 14255, 14257 (Aug. 3, 1971) (codified at 26 C.F.R. pt. 179). Contemporary dictionaries defined "frame" and "receiver" the same way. For example, *Webster's Dictionary* defined a "frame" as "the basic unit of a handgun which serves as a mounting for the barrel and operating parts of the arm," and a "receiver" as "the metal frame in which the action of a firearm is fitted and to which the breech end of the barrel is attached." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 902, 1894 (1971); *see also* John Olson, OLSON'S ENCYCLOPEDIA OF SMALL ARMS 72, 138 (1985).

These definitions are consistent with Congress's unambiguous intent that every "firearm" subject to regulation would have a frame or receiver, as that is where Congress directed importers and manufacturers to place serial numbers: "Licensed importers and licensed manufacturers shall identify by means of a serial number engraved or cast *on the receiver or frame of the weapon* . . . each firearm imported or

---

Apr. 22, 2024). In any event, Adamiak was indicted in June 2022, before the ATF's rule took effect on August 24, 2022. 87 Fed. Reg. 24652.

manufactured by such importer or manufacturer." 18 U.S.C. § 923(i) (emphasis added). Thus, under the GCA, every regulated "firearm" must at a minimum *be* a frame or receiver or *contain* a frame or receiver. Absent a frame or receiver, an item—or even a collection of items— cannot be a "firearm" and accordingly cannot be subject to the serialization and other requirements of the GCA.

Consequently, a parts kit lacking a frame or receiver cannot meet the definition of a "firearm." As noted above, Congress's decision to limit its regulation of firearm parts to just one central component—the "frame or receiver"—was an intentional choice designed to make the federal regulation of firearms more feasible by purposely declining to regulate any other firearm parts. Had Congress wanted to regulate firearm parts it would have done so. In fact, Congress demonstrated that it knew how to effectively regulate parts and kits by regulating parts later in the GCA, with regard to a "destructive device." Congress defined a "destructive device" as "any explosive, incendiary, or poison gas," such as a bomb, grenade, mine, or similar device, 18 U.S.C. § 921(a)(4)(A), or *"any combination of parts* either designed or intended for use in converting any device into any destructive device described in subparagraph (A) or

(B) and from which a destructive device may be readily assembled," 18 U.S.C. § 921(a)(4)(C) (emphasis added). Congress was fully capable of adding weapon parts kits to the definition of a "firearm" in a similar manner as it did with "destructive devices," but it did not. "Where Congress has carefully employed a term in one place and excluded it in another, it should not be implied where excluded." *N.C. Dep't of Env't Quality v. FERC*, 3 F.4th 655, 670 (4th Cir. 2021) (quoting *United States v. Wong Kim Bo*, 472 F.2d 720, 722 (5th Cir. 1972)) (brackets omitted); *accord*, *Allison Engine Co. v. U.S. ex rel. Sanders*, 553 U.S. 662, 671 (2008).

Thus, the government must prove that Adamiak possessed more than mere *parts*, because parts alone cannot constitute a "firearm." Instead, the government must demonstrate that Adamiak possessed either a "weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive" or a "frame or receiver" of such weapon. The government failed to do so.

10

## II. The government must also prove that Adamiak *knew* that he possessed a National Firearms Act-regulated "firearm."

Congress enacted the National Firearms Act ("NFA") in 1934 "[t]o provide for the taxation of manufacturers, importers, and dealers in certain firearms and machine guns, to tax the sale or other disposal of such weapons, and to restrict importation and regulate interstate transportation thereof." National Firearms Act of 1934, ch. 757, 48 Stat. 1236, 1236 (June 26, 1934).[5] The NFA, which imposes transfer taxes and registration requirements on certain firearms, "applies to a much narrower class of firearms and firearm accessories" than the GCA. *VanDerStok*, 86 F.4th at 203. "Today, the NFA applies only to weapons like machine guns, short-barreled shotguns and rifles, and suppressors." *Id.* at 203. Under the NFA:

> The term "firearm" means (1) a shotgun having a barrel or barrels of less than 18 inches in length; (2) a weapon made from a shotgun if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 18 inches in length; (3) a rifle having a barrel or barrels of less than 16 inches in length; (4) a weapon made from a rifle if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 16 inches in length; (5) any other weapon, as defined in subsection (e); (6) a machinegun; (7) any silencer (as defined in section 921 of title

_____

[5] The NFA, as amended, is now codified at 26 U.S.C. § 5801, *et seq.*

11

18, United States Code); and (8) a destructive device. The term "firearm" shall not include an antique firearm. . . .

26 U.S.C. § 5845(a). The NFA makes it unlawful for any person to, among other things, "receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record"—with "firearm" being limited to those covered by the NFA. 26 U.S.C. § 5861(d). Persons who violate the statute face up to ten years' imprisonment per violation. 26 U.S.C. § 5871. The statute does not explicitly address *mens rea*.

The Supreme Court, however, addressed the *mens rea* requirement in *Staples v. United States*, 511 U.S. 600 (1994). Upon executing a search warrant at Staples's residence, local police and federal agents recovered an AR-15 rifle. The AR-15 is a semiautomatic rifle modeled after the military's M-16 rifle. The key difference, however, is that the military version is a selective fire rifle—*i.e.*, the operator can choose automatic or semiautomatic fire by rotating a selector switch.[6]

---

[6] Automatic fire involves multiple rounds fired continuously with a single trigger pull, whereas semiautomatic fire involves one round fired per trigger pull.

12

Upon examination, the authorities determined that Staples's AR-15 had been modified to incorporate a selector switch that enabled the rifle to fire either automatically or semiautomatically. Staples was charged with unlawful possession of an unregistered "machinegun" in violation of 26 U.S.C. § 5861(d).

At trial, Staples testified that he had never fired the AR-15 automatically while it was in his possession and that he was unaware that it was capable of automatic fire. Staples asked the court to instruct the jury that the Government must prove beyond a reasonable doubt that he "knew that the gun would fire fully automatically." *Staples*, 511 U.S. at 604. The court rejected Staples's proposed instruction and instead gave the following instruction:

> The Government need not prove the defendant knows he's dealing with a weapon possessing every last characteristic which subjects it to the regulation. It would be enough to prove he knows that he is dealing with a dangerous device of a type as would alert one to the likelihood of regulation.

*Id*. (brackets and footnote omitted). Staples was convicted, the Tenth Circuit affirmed his conviction, and Staples appealed.

The Supreme Court attributed to the Government the logical outgrowth of its position—that "any person who has purchased what he

13

believes to be a semiautomatic rifle or handgun . . . can be subject to imprisonment, despite absolute ignorance of the gun's firing capabilities, if the gun turns out to be an automatic." *Id.* at 615. The Court rejected the Government's position:

> We concur in the Fifth Circuit's conclusion on this point: "It is unthinkable to us that Congress intended to subject such law-abiding, well-intentioned citizens to a possible ten-year term of imprisonment if what they genuinely and reasonably believed was a conventional semi-automatic weapon turns out to have worn down into or been secretly modified to be a fully automatic weapon." [*United States v.*] *Anderson*, [885 F.2d 1248, 1254 (5th Cir. 1989)]. As we noted in *Morissette* [*v. United States*, 342 U.S. 246, 263 (1952)], the "purpose and obvious effect of doing away with the requirement of a guilty intent is to ease the prosecution's path to conviction." We are reluctant to impute that purpose to Congress where, as here, it would mean easing the path to convicting persons whose conduct would not even alert them to the probability of strict regulation in the form of a statute such as § 5861(d).

*Id.* at 615–16 (citation, ellipsis, and brackets omitted).

The Court further noted that "the penalty imposed under a statute has been a significant consideration in determining whether the statute should be construed as dispensing with *mens rea.*" *Id.* at 616. Accordingly, the Court concluded that "the penalty attached to § 5861(d)"—up to ten years' imprisonment per violation—"suggests that

14

Congress did not intend to eliminate a *mens rea* requirement for violation of the section." *Id.* at 619.

For the foregoing reasons, the Court held that "to obtain a conviction, the Government should have been required to prove that [Staples] knew of the features of his AR-15 that brought it within the scope of the [NFA]." *Id.* Justice Ginsberg, concurring in the judgment, likewise concluded "that conviction under § 5861(d) requires proof that the defendant knew he possessed not simply a gun, but a machinegun." *Id.* at 623.

*Staples* makes clear that even if this Court determines that any of the particular parts in Adamiak's possession could be regulated as a "firearm," the government must also prove that Adamiak knew it was a "firearm," and further, that the "firearm" contained characteristics that brought it within the NFA's scope. The government failed to do so.

## III. The district court erred by declining to apply the rule of lenity.

Congress has been clear in its intent *not* to regulate gun parts—except for a "frame or receiver"—as a "firearm." But the district court allowed the jury to decide whether the parts at issue constitute a "firearm." *See* Appellant's Br. at 20–22. Whether the parts constitute a

15

"firearm" under a federal statute is a legal determination that the court should have interpreted itself. *See id.* In doing so, even if the court determined that the statute is ambiguous (which, as demonstrated above, it is not), the court should have interpreted the law favorably to Adamiak under the rule of lenity.

### A. Ambiguous criminal statutes must be resolved in favor of the accused.

The rule of lenity is "a rule of statutory construction whose purpose is to help give authoritative meaning to statutory language." *United States v. Thompson/Ctr. Arms Co.*, 504 U.S. 505, 518 n.10 (1992). Under the rule, "when there are two rational readings of a criminal statute, one harsher than the other, we are to choose the harsher only when Congress has spoken in clear and definite language." *McNally v. United States*, 483 U.S. 350, 359–60 (1987) (citations omitted); *see also United States v. Bass*, 404 U.S. 336, 348 (1971) (lenity requires that "where there is ambiguity in a criminal statute, doubts are resolved in favor of the defendant"); *United States v. George*, 946 F.3d 643, 645 (4th Cir. 2020) (the rule of lenity is "a rule of statutory construction, that provides that when ambiguity is present in criminal statutes, that ambiguity 'must be resolved in favor of lenity for the accused'") (citation omitted). The rule of

16

lenity supports "the 'well known rule' that 'penal laws are to be construed strictly,'" *Cargill v. Garland*, 57 F.4th 447, 451 (5th Cir. 2023), *cert. granted*, No. 22-976 (U.S. Nov. 3, 2023) (quoting *United States v. Wiltberger*, 18 U.S. 76, 94–95 (1820)), which "is founded on the tenderness of the law for the rights of individuals" and "is perhaps not much less old than construction itself," *Wiltberger*, 18 U.S. at 95.

The Supreme Court has described the rule of lenity as a "time-honored interpretive guideline" that "serves to ensure both that there is fair warning of the boundaries of criminal conduct and that legislatures, not courts, define criminal liability." *Crandon v. United States*, 494 U.S. 152, 158 (1990) (quoting *Liparota v. United States*, 471 U.S. 419, 427 (1985)); *see also Wiltberger*, 18 U.S. at 95 ("[T]he power of punishment is vested in the legislative, not in the judicial department. It is the legislature, not the Court, which is to define a crime, and ordain its punishment."). Indeed,

> [o]nly the people's elected representatives in Congress have the power to write new federal criminal laws. And when Congress exercises that power, it has to write statutes that give ordinary people fair warning about what the law demands of them. Vague laws transgress both of those constitutional requirements. They hand off the legislature's responsibility for defining criminal behavior to unelected

> prosecutors and judges, and they leave people with no sure way to know what consequences will attach to their conduct.

*United States v. Davis*, 588 U.S. 445, 447–48 (2019). Here, the district court handed off the responsibility for defining criminal behavior to a jury, who defined it in a manner unfavorable to Adamiak, in direct violation of Supreme Court precedent.

### B. The rule of lenity applies to statutes that have both criminal and civil applications.

The *Staples* Court found it "unnecessary to rely on the rule of lenity" to resolve that case, 511 U.S. at 619 n.17, but the rule of lenity is nonetheless relevant to interpreting both the GCA and the NFA when there is ambiguity.

Like the present case, *Thompson/Ctr. Arms Co.* involved an alleged NFA violation. Thompson manufactured a pistol with a 10-inch barrel that did not fall within the NFA's definition of "firearm." Thompson also manufactured a conversion kit that enabled the gun owner to convert the pistol into a rifle by adding a rifle stock and replacing the 10-inch barrel with a 21-inch barrel. If the gun owner added the stock but did not change barrels, however, the result would be a short-barreled rifle—*i.e.*, a regulated "firearm" for purposes of the NFA. A majority of the Court

18

agreed (1) that the NFA was ambiguous as to whether the pistol and conversion kit constituted a "firearm" and (2) that the ambiguity triggered the rule of lenity:

> The key to resolving the ambiguity lies in recognizing that although it is a tax statute that we construe now in a civil setting, the NFA has criminal applications that carry no additional requirement of willfulness. Making a firearm without approval may be subject to criminal sanction, as is possession of an unregistered firearm and failure to pay the tax on one, 26 U.S.C. §§ 5861, 5871. It is proper, therefore, to apply the rule of lenity and resolve the ambiguity in Thompson/Center's favor. Accordingly, we conclude that the Contender pistol and carbine kit when packaged together by Thompson/Center have not been "made" into a short-barreled rifle for purposes of the NFA.

*Id.* at 518 (citations omitted) .

*Leocal v. Ashcroft*, 543 U.S. 1 (2004), involved construction of the Immigration and Nationality Act, 8 U.S.C. § 1101, *et seq*. Leocal was convicted of driving under the influence of alcohol and causing serious bodily injury in violation of Florida law. The Immigration and Naturalization Service sought to deport him pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii), which provides that "any alien who is convicted of an aggravated felony" is deportable. The defined term "aggravated felony" included "crimes of violence" as defined in 18 U.S.C. § 16, so the Court

19

was tasked with interpreting § 16. In a footnote, the Court addressed the rule of lenity:

> Even if § 16 lacked clarity on this point, we would be constrained to interpret any ambiguity in the statute in petitioner's favor. Although here we deal with § 16 in the deportation context, § 16 is a criminal statute, and it has both criminal and noncriminal applications. Because we must interpret the statute consistently, whether we encounter its application in a criminal or noncriminal context, the rule of lenity applies. Cf. *United States v. Thompson/Center Arms Co.*, 504 U.S. 505, 517–518, 112 S.Ct. 2102, 119 L.Ed.2d 308 (1992) (plurality opinion) (applying the rule of lenity to a tax statute, in a civil setting, because the statute had criminal applications and thus had to be interpreted consistently with its criminal applications).

*Leocal*, 543 U.S. at 11 n.8.

In *Clark v. Martinez*, which did not involve construction of a criminal statute, the Court quoted *Leocal* for the proposition that "if a statute has criminal applications, 'the rule of lenity applies' to the Court's interpretation of the statute even in immigration cases 'because we must interpret the statute consistently, whether we encounter its application in a criminal or noncriminal context.'" 543 U.S. 371, 380 (2004) (quoting *Leocal*, 543 U.S. at 11 n.8). *See also Whitman v. United States*, 574 U.S. 1003, 135 S.Ct. 352, 353 (2014) (Scalia, J., statement respecting denial of certiorari) ("Deferring to the prosecuting branch's expansive views of

20

these statutes 'would turn their normal construction upside-down, replacing the doctrine of lenity with a doctrine of severity'") (citation, brackets, and ellipsis omitted).

To reiterate, there should be no ambiguity to resolve. Congress, finding "that it is impractical to have controls over each small part of a firearm," deliberately omitted from the GCA's "definition of 'firearm', any part or parts of such a weapon" except for "the major parts of the firearm; that is, [the] frame or receiver." S. Rep. No. 90-1097, at 2200. Moreover, since gun parts are not expressly included in the definition of "firearm," their inclusion is "at the very least ambiguous." *Cargill*, 57 F.4th at 470. A court rather than a jury must interpret the statutory language, and under the rule of lenity "that ambiguity 'must be resolved in favor of lenity for the accused.'" *George*, 946 F.3d at 645.

The rule of lenity "embodies 'the instinctive distastes against men languishing in prison unless the lawmaker has clearly said they should.'" *Bass*, 404 U.S. at 348 (quoting Henry J. Friendly, *Mr. Justice Frankfurter and the Reading of Statutes*, *in* Benchmarks 196, 209 (1967)). Adamiak is languishing in prison right now, and it is not at all clear that lawmakers prohibited his conduct.

21

## CONCLUSION

The district court's judgment should be reversed.

Respectfully submitted,

/s/ *Joseph G.S. Greenlee*
JOSEPH G.S. GREENLEE
GREENLEE LAW, PLLC
PO Box 4061
McCall, ID 83638
(208) 271-2494
joseph@greenlee.law
*Counsel of Record*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 29(a)(5) because this brief contains 4,398 words, excluding the parts of the brief excluded by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the typestyle requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in 14-point, proportionally spaced Century Schoolbook font.

/s/ *Joseph G.S. Greenlee*
*Counsel of Record*

23

## CERTIFICATE OF SERVICE

I certify that on May 2, 2024, I served the foregoing brief with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to all registered CM/ECF users.

/s/ *Joseph G.S. Greenlee*
*Counsel of Record*

24