# UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

_____

**Patrick Tate Adamiak,**

**Defendant-Appellant,**

**v.**

                                          **No. 23-4451**

**United States of America**

**Plaintiff-Appellee.**

_____


## ON APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA AT NORFOLK

---

## REPLY BRIEF OF APPELLANT

---

Matthew Larosiere, Esq.
6964 Houlton Circle
Lake Worth, FL 33467
Email: larosieremm@gmail.com
Telephone: 561-452-7575
*Counsel for Appellant*

## TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................2

TABLE OF AUTHORITIES..........................................................3

ARGUMENT ...............................................................................5

I.    THE INDICTMENT WAS DEFECTIVE ..............................5

    A.    The Cases the Government Cites Highlight the
Deficiencies in the Indictment........................................7

    B.    Comparing the Language of Cited Indictments................10

II.   THE GOVERNMENT CANNOT INFLICT THE SAME HARMS
OF CONSTRUCTIVE AMENDMENT IN REVERSE .....................13

III.  VAGUENESS AND LENITY .............................................13

IV.   THE DISTINCTION OF FACT VERSUS LAW .......................16

V.    THE SECOND AMENDMENT ..........................................17

VI.   JURY INSTRUCTIONS ...................................................18

VII.  SUFFICIENCY OF THE EVIDENCE ..................................20

CONCLUSION...........................................................................23

CERTIFICATE OF COMPLIANCE WITH RULE 32(A) .................24

CERTIFICATE OF SERVICE ......................................................25

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Aposhian v. Wilkinson* 989 F.3d 890 (10th Cir. 2021)............................15

*GOA v. Garland*, 992 F.3d 446 (6th Cir. 2021)......................................15

*Hamling v. United States*, 418 U.S. 87 (1974).................................12, 13

*New York State Rifle & Pistol Ass'n, Inc. v. Cuomo*,
   804 F.3d 242 (2d Cir. 2015) ...................................................14

*Robbins v. U.S.*, 476 F.2d 26 (10th Cir. 1973) ...................................7, 11

*U.S. v. Just*, 74 F.3d 902 (8th Cir. 1996) ................................................10

*U.S. v. Nieves*, 108 Fed. Appx 700 (4th Cir. 2004) ..................................6

*U.S. v. Pennington*, 168 F.3d 1060 (8th Cir. 1999)..................................8

*U.S. v. Thompson/Center Arms Co.* 112 S.Ct 2102 (1992) ...................22

*U.S. v. TRW Rifle 7.62x51mm Caliber,
   One Model 14 Serial 593006*, 447 F.3d 686 (9th Cir. 2006)................15

*U.S. v. Willis*, 992 F.2d 489 (4th Cir. 1993)...........................................20

*United States v. Carll*, 105 U.S. 611 (1881)..............................................5

*United States v. Ervin* (23-13062) (11th Cir. ____).................................16

*United States v. Hoover*, 635 F. Supp. 3d 1305
   (M.D. Fla. 2022) ....................................................8, 9, 11, 16

*United States v. Johnson*, 718 F.2d 1317 (5th Cir. 1983) (en banc).......19

*United States v. Smith*, 44 F.3d 1259 (4th Cir. 1995) ............................18

**Statutes**

18 U.S.C. §921 ...............................................................................20

26 U.S.C. §5861 .......................................................................5, 6, 7

26 U.S.C. §5845 ...................................................................... passim

**Rules**

Fed. R. Crim. P. 7(c)(1) ...................................................................8

## ARGUMENT

### I.    THE INDICTMENT WAS DEFECTIVE

The government makes a series of concerning arguments as to why the indictment should stand. For one, it claims that the divergent definitions under §5845 "do not create additional elements of the offenses charged under §§ 5861(d) and 922(o). Therefore, the government was not required to charge the applicable definition(s) in the indictment." (Doc. 76 at 29). This is not the question, though. The question is whether the indictment "fully, directly, and expressly, **without any uncertainty or ambiguity**, set forth **all** the elements necessary to constitute the offence intended to be punished" and whether the indictment complied "with the necessity of alleging in the indictment all the **facts** necessary to bring the case" within the intent of the statute. *United States v. Carll*, 105 U.S. 611 (1881) (emphasis added). The government's failure to give any specificity in the indictment cannot be remedied by wriggling as to whether the missing information can be considered an "element" or not. Even if the government were correct that the particular definition (or definitions) the prosecution is proceeding under does not change "elements," it changes the "facts" underlying the scope of the statute.

As an example, §5861(d) covers the receipt or possession of any "firearm" not registered to an individual in the National Firearms Registration and Transfer record. For the government's argument to hold water, it would have to be the case that there is no meaningful distinction between a prosecution involving "a part designed and intended solely and exclusively [] for use in converting a weapon into a machinegun," and one involving "any combination of parts form which a machinegun can be assembled if such parts are in the possession or under the control of a person. 26 U.S.C. §5845(b). This is obviously not the case. The same logic that guided this honorable court in *U.S. v. Nieves*, 108 Fed. Appx 700 (4th Cir. 2004) applies equally here, albeit in reverse. Here, the government indicted Appellant by reference to an entire statute with multiple divergent sub-definitions, as explained at length in Appellant's opening brief. The government attempts to avoid this issue by distinguishing *Nieves* as a constructive amendment case. (Doc. 76 at 30). While *Nieves* is about constructive amendment, very similar constitutional shortcomings are implicated where the indictment was defective to begin with.

The government tersely asserts that "no authority supports [Appellant's] position" that an indictment alleging a violation of the National Firearms Act must contain enough information to put Defendant on notice as to what type of "firearm" he is accused of possessing or transferring, but the underlying indictment in virtually every case the government cites as supporting its position contains all of the elements of the applicable part of §5845. (Doc. 76 at 28-29).

## A. The Cases the Government Cites Highlight the Deficiencies in the Indictment

First, the government contends *Robbins v. U.S.*, 476 F.2d 26 (10th Cir. 1973) stands for the proposition that the government may be silent as to what type of §5845 "firearm" is charged in a §5861(d) indictment. (Doc. 76 at 27). However, the *Robbins* indictment charged that appellant did "knowingly possess a firearm, that is, a destructive device being more particularly described as one homemade **incendiary bomb**, which had not been registered to him in the National Firearms Registration and Transfer Record." 476 F.2d at 30 (emphasis added). The chief argument in *Robbins* concerning the indictment was a technical one, that being whether the government needed to specifically cite §5845(a)(8) and (f), and the section requiring registration of firearms. The *Robbins* court did

not dispense with charging an indictment in a way that tracks the definition of the charged item(s), but held that an indictment that specifically lists the requisite facts and elements of the charged conduct— an "incendiary" "bomb" satisfying §5845(f)(1)(A)—did not need to do so with exhaustive reference. *Id.* at 30-31. ("The rule does not require the detailed recital in the indictment of each section of the Act describing the firearm a defendant is charged with possessing. In any event, the omission thereof has not misled the appellant here to his prejudice because the indictment otherwise fully apprises him of the charge.") The government's invocation of *U.S. v. Pennington*, 168 F.3d 1060 (8th Cir. 1999) is similarly contrived. *Pennington* dealt with a defendant arguing that an immaterial sub-term in a definition was not cited, not that the indictment did not contain "the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1).

The government also cites *United States v. Hoover*, 635 F. Supp. 3d 1305 (M.D. Fla. 2022) for the same point. *Hoover* is a case in the middle district of Florida, currently on appeal to the Eleventh Circuit where the undersigned was counsel. The government's citation of *Hoover* as "rejecting the argument that the government 'was required to plead the

specific facts supporting its contention that the [firearms] at issue fall within the definition of machinegun'" is unsupported in this context. (Doc. 76 at 21). The *Hoover* indictment, after amendment in the face of motions to dismiss, charged Defendant-appellants with "cards machined from stainless steel, into which were etched the design for **machinegun conversion devices** known as lightning links, which constituted machineguns as defined in 26 U.S.C. § 5845(a) and §5845(b) **in that they are a combination of parts designed and intended for use in converting a weapon into a machinegun**." 635 F.Supp.3d at 1311 (emphasis added). The ruling relied upon the government was not as to whether the indictment completely alleged a violation, but rather concerned the question of whether a "card" could be a "combination of parts." Interestingly, the text of the order in *Hoover*, cited by the government here, shows that the government in *Hoover* originally indicted a defendant with "knowingly possess[ing] a firearm…that is, a machine gun conversion device, that was not then registered to the defendant," but after motion practice, the indictment was amended to include the specific "combination of parts" language.

Finally, the government relies upon *U.S. v. Just*, 74 F.3d 902 (8th Cir. 1996), for the proposition that it can simply allege a "machinegun," without specificity. However as it relates to the indictment, *Just* did not deal with the question of sufficiency as to the machinegun allegation, but rather the narrow question of whether and how the government had to allege that the firearm was not registered. *Id*. at 904. The indictment was silent as to registration, and the jury was ultimately instructed that the government must prove it was in fact not registered to him. *Id*. ("The instruction created an additional burden for the government, not for Just.").

## B. Comparing the Language of Cited Indictments

Appellant's principal brief explains just how wildly divergent the elements and necessary facts are for the different definitions of "machinegun" and "destructive device." The gulf between the instant case and the cases relied upon by the government necessitate more direct comparison, with items found in §5845 bolded, bearing in mind that the government asserts those cases *support* the sufficiency of the indictment.

| | |
|---|---|
| *Adamiak* | 1. "did knowingly receive and possess a firearm, namely a PPSH **machinegun**, which was not registered [to him]." |
| | 2. "did knowingly possess and transfer a machinegun, that is a PPSH **machinegun**." |
| | 3. "did knowingly receive and possess a **destructive device**, namely a M79, 40mm grenade launcher, which was not registered [to him]." |
| *Robbins* | "did knowingly possess a firearm, that is, a **destructive device** being more particularly described as one homemade **incendiary bomb**, which had not been registered [to him] |
| *Hoover* | "consisted of cards machined from stainless steel, into which were etched the design for machinegun conversion devices known as lightning links, which constituted **machineguns** as defined in 26 U.S.C. § 5845(a) and 5845(b) in that they are a **combination of parts designed and intended for use in converting a weapon into a machinegun**." |

It is worth noting, again, that "grenade launcher", and "antitank projector" are found nowhere in §5845, unlike "incendiary bomb." The government's argument that Appellant might have figured out exactly what he was being charged with at trial does little to enable him to prepare a case for "acquittal or conviction" ahead of the trial itself. *Hamling v. United States*, 418 U.S. 87 at 117 (1974). Discovering at trial that the government's theory rested on "a bore of more than one-half inch in diameter" when hearing it for the first time from the government's experts is a trial by surprise. (Doc. 76 at 24). Similarly, the government itself here cannot decide what Appellant was convicted of. *Compare* (Doc. 76 at 1, 5, 7, 38, 45) (referring to "complete" firearms) *with id*. at (15, 16, 23-25, 37-40, 44-47, 53) (referring to firearms which might be "readily restored," "readily converted," "readily assembled," or "readily repaired").

Appellants submit that prosecutions under §5861 for a "machinegun conversion device," a complete "machinegun," an "incendiary bomb" and a firearm that is a "weapon" "having a bore or bores over one-half inch" that is not useful for "sporting" are so materially different that they are entirely different crimes. It simply cannot be said

that the indictment "fairly inform[ed Appellant] of the charge against which he must defend." *Hamling*, 418 U.S. at 117.

## II.   THE GOVERNMENT CANNOT INFLICT THE SAME HARMS OF CONSTRUCTIVE AMENDMENT IN REVERSE

The government agrees it cannot plead a narrow part of the statute and then broaden, but the implication that it can avoid constitutional shortcomings by indicting vaguely and submitting the entire statute to the jury is absurd. Appellant's brief plainly explains that the theories he advances, citing constructive amendment cases as instructive, is distinct because he was *never* afforded constitutionally sufficient notice. (Doc. 55 at 24-25).

## III.   VAGUENESS AND LENITY

The government's claim that vagueness was not briefed is unsupported, as the vagueness discussion permeated the majority of Appellant's brief, especially in Parts I and II, where appellant stressed the grievous ambiguity in the application of the law—especially given the faulty indictment—to the case at bar by showing Appellant cannot even know under what definition he was convicted by attempting to reverse-

13

engineer the conviction. (Doc. 55). That Appellant did not exceed his word count by re-stating his thorough analysis of the statute's grievous ambiguity in its own section does not a waiver make.

"Grounded in due process principles, the void-for-vagueness doctrine provides that no one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes. The doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement. Statutes carrying criminal penalties or implicating the exercise of constitutional rights, like the ones at issue here, are subject to a more stringent vagueness standard than are civil or economic regulations. However, the doctrine does not require meticulous specificity of statutes, recognizing that language is necessarily marked by a degree of imprecision. *New York State Rifle & Pistol Ass'n, Inc. v. Cuomo*, 804 F.3d 242, 265 (2d Cir. 2015) (denying a pre-enforcement facial vagueness challenge).

In any event, given the government's sudden and thorough reliance on "readily" language—a theory under which we cannot know Appellant

was convicted—the vagueness in "readily," be it in "restored," "converted," or "assembled" is apparent. Especially where most of the caselaw purporting to interpret those provisions makes reliance on *Chevron*. *GOA v. Garland*, 992 F.3d 446 (6th Cir. 2021) held a section here ambiguous, and applied *Chevron*. *Chevron* is gone now, and the case is being reheard *en banc*. The Tenth circuit similarly found the machinegun definition to be ambiguous and applied *Chevron* in another bump stock case. *Aposhian v. Wilkinson* 989 F.3d 890 (10th Cir. 2021) *but see U.S. v. TRW Rifle 7.62x51mm Caliber, One Model 14 Serial 593006*, 447 F.3d 686 (9th Cir. 2006) ("The key factor, which is satisfied here, is that the firearm can be readily restored to shoot automatically. We therefore affirm the district court's grant of summary judgment in favor of the United States.").

## IV.   THE DISTINCTION OF FACT VERSUS LAW

Appellant will not unnecessarily spill ink, as he makes clear in his initial brief that there cannot be a purely factual dispute as to whether an item is a "firearm" under §5845. This is necessarily a question of statutory interpretation. A major component of Appellant's case is that the statute cannot, consistent with the Second, Fifth, and Sixth Amendments, criminalize with a brush so broad that Appellant cannot even know under what theory he was convicted, so long as a jury stood somewhere in the mix. None of the cases the government cite actually stand for the proposition that submitting the question of whether a firearm is a NFA firearm is a question of fact purely for the jury, save for the district court in *Hoover*, which is presently on appeal to the Eleventh Circuit, a case where the chief argument is whether a homogenous piece of steel can be a "combination of parts," a very different question from the one at bar. *United States v. Ervin* (23-13062) (11th Cir. ____).

## V.   THE SECOND AMENDMENT

The government's response to Second Amendment arguments, as is characteristic of its responses to Appellants' other arguments, simply asserts without engaging with the issues that form the basis of this appeal that the inoperable relics were a "machinegun, grenade launchers, and anti-tank missile launchers." (Doc. 76 at 36). By focusing its analysis on "a PPSh41," "an M203," "an M79," and "an RPG7," the government responds as if Appellant had advanced a facial Second Amendment challenge. It is of no import to this case what "an M79," in the opinion of the government's witness, is. Rather, what mattered was what *these parts* and *these relics* actually *were*. The government in no way responded to the actual argument: that *these particular items* may be regulated in such a fashion and Appellant punished as he was, consistent with the Second Amendment.

## VI.  JURY INSTRUCTIONS

Appellant based its arguments on the clear error inherent in the final instruction, but notes that the government, by highlighting the court's removal of "all of the" from Appellant's proposed jury instructions, injected another issue. As it stands, the jury could have believed it could pick elements from divergent definitions of machinegun or destructive device to come up with a conviction, leaving us on appeal to merely guess as to what it was thinking.

The government cites *United States v. Smith*, 44 F.3d 1259, 1270–71 (4th Cir. 1995) ("The district court is not required to give defendant's particular form of instruction, as long as the instruction the court gives fairly covers a theory that the defense offers."), glazing over the fact that instructing the jury with respect to *the entirety of a divergent statute* creates an entirely different type of error. The government notes that it could not locate caselaw directly on-point. This is because the caselaw appears to be devoid of discussion of jury instructions rooted in a failed indictment. Appellants have cited plenty of caselaw discussing indictment sufficiency, and plenty discussing jury instructions in a vacuum, but the only cases Appellant could find discussing the issues in

18

instructing the jury as to the entirety of a statute were found in the context of constructive amendments. Indeed, every case the government and appellant cited includes an indictment that actually contains the offense conduct with sufficient specificity that it can be identified upon examination of the definitions in the statute.

*United States v. Johnson* presents a useful analogy. 718 F.2d 1317, 1321 n.13 (5th Cir. 1983) (en banc) ("It is the judge's duty to instruct the jury concerning [the] definition [of a security]: the way in which a security is identified. Whether a particular piece of paper meets that definition, however, is for the jury to decide."). It may be up to the jury to decide whether "a particular piece of paper" meets a charged definition, but one cannot simply allege "drugs" then submit the entire controlled substances act to the jury to "figure it out."

The government contends that "the question for the jury to resolve was whether the PPSh-41 could be 'readily restored to shoot'" (Doc. 76 at 46) but this can be gleamed from nowhere in the record, much less the indictment or instructions. The plain error here, like was the case in *Nieves*, is in that the jury was charged as to the entirety of a divergent statute, such that we can only guess as to what theory the jury convicted.

19

## VII.  SUFFICIENCY OF THE EVIDENCE

As Appellant noted in his principal brief, it is telling that the majority of evidence the government cites is the opinion testimony of a convicted felon confidential informant that the government paid $8,000 for his services in prosecuting Appellant. JA504. The government never engaged with the question of whether of the items *as Appellant had them* were ever "weapons," and in fact the government never put on evidence that they ever were *at any time*—a fact material to all convictions, even under the "readily" definitions. Instead, the government ersts its head on the statements of the CI "*if* he had reassembled the PPSh-41 and test-fired it, it *would have* fired as a machinegun." (Doc. 76 at 46). This is not probative, it is merely legal conclusion testimony.

The government cites without context *U.S. v. Willis*, 992 F.2d 489 (4th Cir. 1993) for the proposition that "an inoperable firearm" is a "firearm", (Doc. 76 at 47) but *Willis* presents a compelling analogy in itself. *Willis* was a case concerning the carrying of a revolver with a broken firing pin for the purposes of §921(a)(3), which is entirely different from the case at bar. Firearms in the §921(a)(3) context are the opposite of those in the §5845 context. §921(a)(3) is the catch-all, where §5845 is

narrow. §5845 features tests of objective capability, while §921(a)(3) covers "any weapon…which **will** or **is designed to** or may readily be converted to expel a projectile by the action of an explosive" and independently "the frame or receiver of that weapon." On that, a broken firing pin cannot cause one to escape from possessing the frame. Whereas a failure of objective capability, depending on the §5845 definition being charged, may or may not escape escape liability.

Next the government asserts that its reliance on unpublished guidance was irrelevant as the relevant definitions are in statute, then goes on to argue that its evidence was sufficient because its paid informant testified to the jury that destroyed parts were "normally cut" a certain way, something found nowhere in the statutes, and going on to assert that such cuts are required. The government cannot have it both ways. It cannot state that the §5845, in a vacuum, is enough to provide sufficient notice both for the jury and Appellant, then rely as evidence testimony about unpublished, unpromulgated policies of the ATF. (Doc. 76 at 49).

Similarly, the government cites a reading of the law as evidence the particular items Appellant possessed were "weapons," (Doc. 76 at 61) but

the testimony about what an RPG7 or an M203 or an M79 can do are immaterial to the items Adamiak was charged with.

The government takes time examining the bore diameters of the items—something material to some, but not all §5845 definition—but nowhere was it ever charged that the bore diameter was relevant. (Doc. 76 at 54).

Furthermore, the government's arguments about assembling the firearms completely ignore, and fail to engage with *U.S. v. Thompson/Center Arms Co.* 112 S.Ct 2102, 2106 (1992), where the Supreme Court held that, even where a violative combination can be assembled from items *in the same box* NFA treatment cannot follow if plausible lawful configurations are present. *See* (Doc. 55 at 51-55),

## **CONCLUSION**

For all the reasons set out in the initial brief, and all those set forth above, Appellant Adamiak respectfully requests this Honorable court reverse the judgment and sentences imposed in this case and remand the case to the district court with instructions to inter a judgment of acquittal, or, in the alternative, reverse the judgment and sentence of the district court with instructions to dismiss the indictment with prejudice.

Respectfully submitted,

/s/ Matthew Larosiere
Matthew Larosiere, Esq.
6964 Houlton Circle
Lake Worth, FL 33467
Email: larosieremm@gmail.com
Telephone: 561-452-7575
*Counsel for Appellant*

## CERTIFICATE OF COMPLIANCE WITH RULE 32(A)

The undersigned certifies, pursuant to 4th Cir. Rule 28-1, that this brief complies with the type-volume limitation of the Federal Rule of Appellate Procedure (32)(a) because it contains 3,372 words, excluding the parts exempted by Rule 32(f). This brief complies with the typeface requirements and type style requirements for Rule 32(a) because it has been prepared in a proportionally-based typeface with Microsoft Word 2023 in 14 point, Century Schoolbook font.

/s/ Matthew Larosiere
Matthew Larosiere, Esq.
6964 Houlton Circle
Lake Worth, FL 33467
Email: larosieremm@gmail.com
Telephone: 561-452-7575
*Counsel for Appellant*

## **CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing was sent by CM/ECF on August 9, 2024, and notice of this filing was electronically served on all parties there registered for service, including:

JACQUELINE BECHARA,
*Assistant United States Attorney*

No paper copies are being furnished due to the Court's March 18, 2024 order. (Doc. 54)

/s/ Matthew Larosiere
Matthew Larosiere, Esq.
6964 Houlton Circle
Lake Worth, FL 33467
Email: larosieremm@gmail.com
Telephone: 561-452-7575
*Counsel for Appellant*