In the
United States Court of Appeals
for the Fourth Circuit

No. 23-4451

United States of America,

*Appellee*,

v.

Patrick Tate Adamiak,

*Appellant*.

Appeal from the United States District Court
for the Eastern District of Virginia
at Norfolk
*The Honorable Arenda L. Wright Allen, District Judge*

Supplemental Brief of the United States

| | |
|---|---|
| Jessica D. Aber<br>United States Attorney | Jacqueline R. Bechara<br>Assistant United States Attorney<br>2100 Jamieson Avenue<br>Alexandria, Virginia 22314<br>(703) 299-3700 |

*Attorneys for the United States of America*

**Table of Contents**

                                        **Page**

Table of Authorities ................................................................................................. ii

Introduction ................................................................................................................1

Argument....................................................................................................................3

       A.     The *Cargill* decision. ....................................................................3

       B.     *Cargill* has no application to this case. ...................................4

Conclusion ...............................................................................................................10

Statement Regarding Oral Argument ......................................................................11

Certificate of Compliance ........................................................................................11

## Table of Authorities

Page

**Cases**

*Bianchi v. Brown*, 111 F.4th 438 (4th Cir. 2024) (en banc) ...............................2, 5

*Garland v. Cargill*, 602 U.S. 406 (2024) ..................................................... 2, 3, 4, 5

*United States v. Berner*, No. 1:20-cr-8-RP,
    2020 WL 3065106 (W.D. Tex. June 9, 2020) ..................................................9

*United States v. Campo*, 793 F.2d 1251 (11th Cir. 1986) (per curiam) ...................9

*United States v. Farmer*, No. 2:22-cr-20678,
    2024 WL 4254320 (E.D. Mich. Sept. 20, 2024) .............................................8

*United States v. Griffin*, 705 F.2d 434 (11th Cir. 1983) (per curiam) .....................9

*United States v. Griley*, 814 F.2d 967 (4th Cir. 1987) ..............................................7

*United States v. Hoover*, 635 F. Supp. 3d 1305 (M.D. Fla. 2022) ........................8, 9

*United States v. Kuzma*, 967 F.3d 959 (9th Cir. 2020) .............................................5

**Statutes**

18 U.S.C. § 922(o) ......................................................................................................1

26 U.S.C. § 5841 ........................................................................................................1

26 U.S.C. § 5845(b) ........................................................................................... passim

26 U.S.C. § 5845(f) ............................................................................................ passim

26 U.S.C. § 5861(d) ...................................................................................................1

26 U.S.C. § 5871 ........................................................................................................1

**Regulations**

Bump-Stock-Type Devices, 83 Fed. Reg. 66514 (Dec. 26, 2018) ...........................3

## Introduction

A jury found Patrick Adamiak guilty of receiving and possessing an unregistered firearm, in violation of 26 U.S.C. §§ 5841, 5845, 5861(d), and 5871 ("Count One"); possessing and transferring a machinegun, in violation of 18 U.S.C. § 922(o) ("Count Two"); and three counts of receiving and possessing unregistered destructive devices, in violation of §§ 5841, 5845, 5861(d), and 5871 ("Counts Three, Four, and Five"). The weapon charged in Counts One and Two was a PPSh-41 machinegun. JA37–38. The weapons charged in Counts Three, Four, and Five were an M79 40mm grenade launcher, an M203 40mm grenade launcher, and two RPG-7 antitank missile launchers, respectively. JA38–39.

In this direct appeal, Adamiak raises five challenges to his convictions and sentence. As relevant here, he contends that the district court erred in denying his motion to dismiss the indictment on the grounds that it fails to state an offense, that §§ 5845(b) and (f) are unconstitutionally vague as applied to him, and that § 5845 violates the Second Amendment as applied to him. Def. Br. 10–19, 57–58, 61–65. Adamiak also argues that the district court should have granted his motion for a judgment of acquittal, reasoning, in part, that the court improperly submitted to the jury the questions whether the weapons he possessed satisfied the statutory definitions of "machinegun" and "destructive device." Def. Br. 20–27. The

1

government maintains that the district court properly denied his motion to dismiss, Gov't Br. 17–30, and his motion for a judgment of acquittal, Gov't Br. 35–49.

On Adamiak's motion, the Court ordered the parties to file supplemental briefs "addressing the application, if any, of *Garland v. Cargill*, 602 U.S. 406 (2024), to the instant case." Doc. No. 95 at 1–2. In *Cargill*, the Supreme Court held that the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") exceeded its statutory authority in promulgating a regulation classifying a bump stock as a "machinegun" under § 5845(b). *Cargill*, 602 U.S. at 415. That decision has no application to this case for at least three reasons.

First, *Cargill* did not involve a Second Amendment claim. Instead, *Cargill* "rested on a close reading of the statutory text and regulatory deviation from it, which is not before [the Court] here." *Bianchi v. Brown*, 111 F.4th 438, 456 (4th Cir. 2024) (en banc). Second, this case does not involve an ATF interpretation of the statutory text. Rather, the charges against Adamiak relied on the plain language enacted by Congress in §§ 5845(b) and (f). Third, the district court correctly recognized that the questions whether the weapons Adamiak possessed satisfied the statutory definitions of "machinegun" and "destructive device" were factual questions for the jury to resolve at trial, not legal questions capable of resolution on a pretrial motion to dismiss. For the reasons stated in the government's response brief, the Court should affirm.

2

**Argument**

**A.     The *Cargill* decision.**

The National Firearms Act defines a "machinegun" as

> any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.

26 U.S.C. § 5845(b).

In 2018, ATF issued a final Rule providing that "[t]he term 'machinegun' includes a bump-stock-type device." Bump-Stock-Type Devices, 83 Fed. Reg. 66514, 66543 (Dec. 26, 2018). The plaintiff in *Cargill* filed a civil suit under the Administrative Procedure Act, asserting that "ATF lacked statutory authority to promulgate the final Rule because bump stocks are not 'machinegun[s]' as defined in § 5845(b)." *Cargill*, 602 U.S. at 414. The Supreme Court agreed that the final rule exceeded ATF's statutory authority for two reasons.

First, the Supreme Court determined that "a semiautomatic rifle equipped with a bump stock is not a 'machinegun' because it does not fire more than one shot 'by a single function of the trigger.'" *Id.* at 423. Instead, even with a bump stock, "a shooter must release and reset the trigger between every shot," and "any subsequent

3

shot fired after the trigger has been released and reset is the result of a separate and distinct 'function of the trigger.'" *Id.* at 415.

Second, the Supreme Court held that "[e]ven if a semiautomatic rifle with a bump stock could fire more than one shot 'by a single function of the trigger,' it would not do so 'automatically.'" *Id.* at 424. The Supreme Court reasoned that "[t]he statute [] specifies the precise action that must 'automatically' cause a weapon to fire 'more than one shot'—a 'single function of the trigger.'" *Id.* Because "[f]iring multiple shots using a semiautomatic rifle with a bump stock" requires "ongoing manual input" in addition to "a single function of the trigger," a bump stock does not satisfy the statutory definition. *Id.* Accordingly, the Supreme Court affirmed the Fifth Circuit's decision that the final Rule violated the Administrative Procedure Act. *Id.* at 415.

**B.** ***Cargill* has no application to this case.**

The Supreme Court's decision in *Cargill* does not apply to this case for at least three reasons.

*First*, *Cargill* did not involve a Second Amendment claim. The only question presented in *Cargill* was whether, as a matter of statutory interpretation, a bump stock qualifies as a "machinegun" as defined in § 5845(b). The Supreme Court held that it does not. *Cargill*, 602 U.S. at 415. But the Supreme Court's statutory-interpretation decision sheds no light on Adamiak's Second Amendment

4

challenge to § 5845.  *Cf. Bianchi*, 111 F.4th at 456 (reasoning, where the question presented was whether the Second Amendment protects a person's ability to purchase and possess an AR-15, that *Cargill* "rested on a close reading of statutory text and regulatory deviation from it, which [was] not before [the Court] here").

*Second*, *Cargill* is not instructive because this case does not involve an ATF interpretation of § 5845.  Adamiak was not charged with the possession of a firearm equipped with a bump stock.  Instead, the superseding indictment relied on the plain language of §§ 5845(b) and (f) in charging Adamiak with receipt and possession of an unregistered machinegun, possession and transfer of a machinegun, and receipt and possession of unregistered destructive devices.  *See* JA37–39.  Congress, not ATF, codified the definitions of "machinegun" and "destructive device" set forth in §§ 5845(b) and (f), respectively.  *See, e.g.*, *United States v. Kuzma*, 967 F.3d 959, 971 (9th Cir. 2020) ("This is not a situation in which an agency has been delegated authority to promulgate underlying *regulatory* prohibitions, which are then enforced by a criminal statute prohibiting willful violations of those regulations. . . . On the contrary, the text of the applicable prohibitions and definitions is set forth in *statutory* language." (citations omitted)).  Indeed, the Supreme Court confirmed in *Cargill* that, "[u]nder [its] reading, § 5845(b) still regulates all traditional machineguns."  602 U.S. at 427.

5

And the statutory definitions of "machinegun" and "destructive device" enacted by Congress are quite broad. A "machinegun" is not just a weapon which actually "shoots . . . automatically more than one shot, without manual reloading, by a single function of the trigger." § 5845(b). By the plain language of the statute, a "machinegun" also includes a weapon which "*can be readily restored* to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger." *Id.* (emphasis added). The statute further defines a "machinegun" as "any *combination of parts from which a machinegun can be assembled* if such parts are in the possession or under the control of a person." *Id.* (emphasis added). The district court adhered to this statutory definition in instructing the jury on the meaning of "machinegun." *See* JA817.

Similarly, a "destructive device" is not just "(1) any explosive, incendiary, or poison gas (A) bomb, (B) grenade, (C) rocket having a propellant charge of more than four ounces, (D) missile having an explosive or incendiary charge of more than one-quarter ounce, (E) mine, or (F) similar device." § 5845(f). The statute also defines a "destructive device" as "any type of weapon by whatever name known which will, *or which may be readily converted to*, expel a projectile by the action of an explosive or other propellant, the barrel or barrels of which have a bore of more than one-half inch in diameter." *Id.* (emphasis added). Congress further defined "destructive device" to include "any combination of parts either designed or

6

intended for use in converting any device into a destructive device as defined in subparagraphs (1) and (2) and from which a destructive device *may be readily assembled*." *Id.* (emphasis added). Again, the district court adhered to this statutory definition in instructing the jury on the meaning of "destructive device." *See* JA817–818.

Moreover, Adamiak's convictions do not depend on ATF regulations interpreting statutory text. The government did not introduce any ATF guidance as evidence at trial. *Cf.* JA2277–2282 (listing the government's exhibits and indicating which exhibits were admitted at trial). Instead, the government introduced the charged weapons themselves, as well as lay and expert testimony regarding the characteristics of those weapons. *See, e.g.*, *United States v. Griley*, 814 F.2d 967, 975 (4th Cir. 1987) (holding, based on lay and ATF expert testimony, that sufficient evidence established that the weapon the defendant possessed was a "machinegun").

To be sure, ATF Firearms Enforcement Officer Ronald Davis offered his expert opinion, based on his technical examination, that the PPSh-41 charged in Counts One and Two was a machinegun. JA578–590; *see* JA2454–2457 (report of technical examination). Likewise, ATF Firearms Enforcement Officer Jeff Bodell offered his expert opinion, based on his technical examination, that the M79 grenade launcher, the M203 grenade launcher, and the RPG-7 anti-tank missile launchers charged in Counts Three, Four, and Five, respectively, were destructive devices.

7

JA634–639; *see* JA2465–2475 (report of technical examination). But the district court properly instructed the jury to "consider the testimony of expert witnesses just as you consider other evidence in this case." JA808. The court added, "if you should conclude that the opinion [of an expert witness] is outweighed by other evidence, you may disregard the opinion in part or in its entirety." JA809.

Consequently, *Cargill*'s holding that a bump stock does not satisfy the statutory definition of a "machinegun" has no bearing on whether Adamiak possessed an unregistered machinegun and unregistered destructive devices under §§ 5845(b) and (f), respectively. *See, e.g.*, *United States v. Farmer*, No. 2:22-cr-20678, 2024 WL 4254320, at *3 (E.D. Mich. Sept. 20, 2024) ("The statutory definition of machinegun is plain and unambiguous, and the ATF's interpretation of the statute is not at issue."); *United States v. Hoover*, 635 F. Supp. 3d 1305, 1321 (M.D. Fla. 2022) ("Because the definition at issue here was not based on a regulation promulgated by a government agency, authority addressing an agency's promulgation of rules is not relevant to the charges brought against [the defendant] or the resolution of his [m]otions to [d]ismiss.").

*Third*, *Cargill*'s conclusion that the ATF exceeded its authority in classifying a bump stock as a "machinegun" sheds no light on whether the weapons Adamiak possessed in this case satisfied the statutory definitions of "machinegun" and "destructive device." Those were factual questions for the jury to resolve at trial,

8

not legal questions for the district court to resolve on a pretrial motion to dismiss. *See, e.g.*, *Hoover*, 635 F. Supp. 3d at 1320 (denying motion to dismiss indictment because the defendant's challenge "raise[d] an issue of fact for resolution by the jury—whether the device at issue constitutes a machinegun under § 5845(b)"); *United States v. Berner*, No. 1:20-cr-8-RP, 2020 WL 3065106, at *2 (W.D. Tex. June 9, 2020) (denying motion to dismiss indictment and reasoning that whether the defendant's "devices fall within § 5845(f)'s exception" for a device which is not designed or redesigned for use as a weapon "is a disputed question of fact . . . and appropriately reserved for the jury"); *see also United States v. Campo*, 793 F.2d 1251, 1252 (11th Cir. 1986) (per curiam) (holding that the question whether the item "was an 'incendiary grenade' under [§ 5845(f)(1)(B)] or was within the exception of . . . a 'device neither designed nor redesigned for use as a weapon' was a matter for the jury"); *United States v. Griffin*, 705 F.2d 434, 436 (11th Cir. 1983) (per curiam) (holding that "the trial court correctly defined barrel length and left the factual determination of the length of the shotgun barrel in question to the jury").

The district court properly instructed the jury on the statutory definitions of "machinegun" and "destructive device." JA816–818. And there was substantial evidence, viewed in the light most favorable to the government, from which a reasonable jury could conclude that the weapon charged in Counts One and Two satisfied the statutory definition of a "machinegun" and the weapons charged in

9

Counts Three, Four, and Five satisfied the statutory definition of a "destructive device." Gov't Br. 37–40, 44–48. As a result, the Supreme Court's determination that ATF exceeded its authority in classifying a bump stock as a "machinegun" under § 5845(b) is not pertinent to the issues here.

## Conclusion

The Court should remand with instructions to vacate Adamiak's conviction and sentence on either Count One or Count Two. In all other respects, the Court should affirm the judgment of the district court.

Respectfully submitted,

Jessica D. Aber
United States Attorney


/s/

Jacqueline R. Bechara
Assistant United States Attorney

## Statement Regarding Oral Argument

The Court has tentatively calendared this appeal for oral argument during the December 10–13, 2024, argument session. Doc. No. 86.

## Certificate of Compliance

I certify that this brief was written using 14-point Times New Roman typeface and Microsoft Word 2016.

I further certify that this brief contains 2,276 words as counted by Microsoft Word, excluding the table of contents, table of authorities, signature block, statement regarding oral argument, and this certificate.

I understand that a material misrepresentation can result in the Court's striking the brief and imposing sanctions.

/s/
Jacqueline R. Bechara
Assistant United States Attorney